ALEXANDER MEAD vs. DAVID S. HUSTED.

In civil cases the verdict of the jury should be determined by the mere pre-
ponderance of evidence, even though the conclusion imputes to the
defendant the guilt of a felony.

In a civil suit for the burning of the plaintiff's barns the judge instructed
the jury that if, after giving the defendant the benefit of the pre-
sumption in his favor, they fairly and honestly believed that it was
more likely to be true that the defendant set fire to the plaintiff's barns
than that he did not, they ought to render a verdict for the plaintiff,
and if they did not so believe, then for the defendant. Held, on the
defendant's appeal, to be no error.

The language used was equivalent to that generally used and approved in
such cases, that the jury ought to find for the plaintiff if the "pre-
ponderance of evidence" is in his favor.

The plaintiff testified as a witness and on cross-examination admitted in
the fullest manner his feelings of hostility to the defendant. Later in
the cross-examination the defendant's counsel asked him if he had not
made a certain remark showing hostility to the defendant, which
inquiry the court ruled out. Held that, the hostility being fully
admitted, the defendant was not harmed by the exclusion of the
inquiry, even if it was in its nature admissible.

It seems that such an inquiry would have been inadmissible unless the
witness had denied the unfriendly feeling or had pretended that it
was slight.

[Argued June 20th—decided October 7th, 1884.]

TRESPASS for breaking and entering the premises of the
plaintiff and burning his barns; brought to the Superior
Court, and tried to the jury before *Andrews, J.* Verdict
for the plaintiff and appeal by the defendant for error in
the rulings and charge of the court. The case is sufficiently
stated in the opinion.

*G. Stoddard* and *S. Tweedy*, with whom were *M. L.
Mason* and *F. A. Hubbard*, for the appellant.

*G. H. Watrous* and *H. S. Sanford*, with whom was *H. W.
R. Hoyt*, for the appellee.

LOOMIS, J. The defendant's counsel having abandoned

the other errors assigned, our discussion will be confined to two questions—one relating to the admission of evidence and the other to the charge to the jury.

1. It is said the court erred in excluding the inquiry made of the plaintiff on cross-examination whether he had not said, since the suit was brought, that the church had made a mistake in giving the defendant a letter of dismissal and recommendation, as it would have a bad effect on the plaintiff's case.

It is conceded that the inquiry was irrelevant, except to show the plaintiff's bias and hostility to the defendant. The fact of such bias was admissible, but not necessarily the manner of showing it or the particular instance in which it appeared. If for instance the plaintiff as a witness had denied his unfriendly feeling, or had pretended it was very slight, then in further cross-examination the special instance might be called out. But here the record shows the fact to have been most fully confessed: "The plaintiff said he was not on friendly terms with the defendant, and had not been since the burning of his first barn in 1875; that he could not love a man who had done him such great wrong as the defendant had; and that he governed his conduct towards the defendant according to the precept, 'Cast not your pearls before swine.'"

The defendant suffered no harm by excluding the special instance, and on the other hand an illegitimate use of the fact might have been made by the jury had it been admitted.

2. The defendant asked the court to charge the jury, "that in this case to create a preponderance of evidence, the evidence must be sufficient to overcome the opposing presumption as well as the opposing evidence. To overcome a strong presumption requires more evidence than to overcome a weak one. To fasten upon the defendant a very heinous or repulsive act, requires stronger proof than to fasten upon him an indifferent act or one in accordance with his known inclinations. To fasten upon the defendant the act of setting fire to the buildings of the plaintiff, should

certainly require more evidence than to establish the fact of payment of a note or of the truth of an account in set-off; because the improbability or presumption in one case is much stronger than in the other."

Upon this request the court charged the jury as follows : " This is a civil action, and is to be decided like any other civil action; and although the acts for which damages are sought might have been prosecuted as crimes, we are dealing with them here only in their civil aspects. In a criminal prosecution the law requires full certainty—that is, proof beyond a reasonable doubt, before a verdict of guilty can be given. In civil actions this degree of certainty is not required. In these cases the law requires juries to take into account, and sometimes to be governed by, probabilities; and among these probabilities are such as attach to human action. There is an antecedent probability that a man will not commit a crime. In a lesser degree, perhaps, there is a probability that a man will not commit any heinous or repulsive act, or one which would subject him to heavy damages. Unfortunately, however, it is true that men do commit crimes, and they do commit acts which subject them to damages. But the probability that they will not do so is one to which the defendant is entitled; or, as stated by counsel, the improbability that a man will do such acts as are charged against the defendant in this complaint and which expose him to heavy loss. This is a presumption to which the defendant is entitled, which you ought to consider, and which ought to be overcome in your minds before you render a verdict against him."

Complaint is made of this charge that it did not go far enough as to the nature and force of the presumption of innocence. If we compare the charge as given with the defendant's request, we find they are substantially alike, differing only in the fact that the charge alludes to the reasons upon which the presumption is founded, which the request omits. But it is said that the jury must have understood from the instructions given that the presumption was one which arose solely out of a man's fear of being subjected

to damages, and consequently that its force would be limited by this fact. We do not however so construe the language of the court. The defendant in express terms had the benefit of such probabilities as attach to human action, and two grounds were alluded to by the court, both the antecedent probability that a man would not commit a crime, and also the other probability that a man would not commit any heinous or repulsive act which would subject him to heavy damages. The action in question involved both these grounds. It seems to us even more favorable for the defendant than the very language of the request would have been.

But in further answer to the objection we ought to say that the charge as given was in advance of the doctrine heretofore enunciated by this court. In other jurisdictions some very respectable authorities have gone in actions of this kind even beyond the rule adopted by the charge; but we think the charge is in accord with the greater number of American authorities. But hitherto in this state we have held to the rule that in civil issues the result should follow the mere preponderance of evidence, even though the result imputes the charge of a felony. To this effect is the decision in *Munson* v. *Atwood*, 30 Conn., 102. It ought however to be regarded as still an open question in this state whether, as one factor in determining the preponderance of the evidence, the triers may consider the presumption in question. The present case does not require a decision upon this point. It is enough to say that this court will not go beyond the position taken by the court below.

The other part of the charge to which exception is taken is as follows:—"If upon the whole testimony, and after giving the defendant the benefit of the presumption in his favor to which I have before alluded, you believe, fairly and honestly, that it is more likely to be true that the defendant did set fire to these barns of the plaintiff than that he did not, you ought to render a verdict for the plaintiff; and on the other hand, if you do not so believe, your verdict should be for the defendant."

Mead v. Husted.

Had the court in the same connection and under the same qualifications simply told the jury that a preponderance of the evidence in favor of the plaintiff would justify a verdict in his favor, instead of using the language, "if you fairly and honestly believe that it is more likely to be true," &c., no fault could be found with it. It would have been the language usually employed, which is always safer for the court than to substitute other words not so common. Nevertheless, if the substituted phrase would be understood in the same way by the jury, or if it is in fact fairly equivalent in meaning, a new trial should not be granted on that account. In the connection and in view of the instructions as to the burden of proof and the duty of the jury to examine the whole evidence and give the defendant the benefit of the presumption in his favor, we think it must have had the same effect on the jury as the ordinary language would.

But it is claimed that the law cannot sanction the use of the substituted phrase or regard it as equivalent. The judge, instead of requesting the jury to weigh the evidence and determine the result by the preponderance, asked them to consider it all, and then gave them the true and only weighing scales whereby preponderance could be determined, namely, the effect on the honest mind of each juror. If the effect was to convince the jury that the controlling facts for the plaintiff were more likely to be true, they ought to give a verdict for him; otherwise for the defendant.

We think the test furnished was the true and only means by which the jury could ascertain whether there was any preponderance. The logical process in all juridical reasoning is only imperfect induction or analogy, and there is no case depending on moral evidence where we can reach a result which excludes all possibility of the contrary being true. In Wharton on Evidence, § 8, it is said that "juridical evidence is evidence of mutable phenomena through human agency addressed to a human tribunal; and both as to the witnesses and the things to which they testify credit is given only on *probable grounds*."

Mead *v.* Husted.

These principles apply to criminal as well as to civil causes; the distinction being as to the degree of probability. The former require a very high degree, amounting, as we sometimes say, to an abiding conviction of the truth, while the latter may be determined upon the evidence by the mere balance of probability. Suppose at a certain stage of a trial, after evidence on both sides has been introduced, the jury are unable to tell which side is more likely to be true, is it not a case of exact equipoise? If nothing further is introduced, the plaintiff of course must fail; but if on application to the court he is permitted to introduce some further evidence, which has the effect to make the jury fairly and honestly believe the issue for the plaintiff is more likely to be true, is it not now a case where the evidence for the plaintiff preponderates? It must be so.

But the defendant appeals to the authorities, and cites two cases that sustain his objections to the charge: *Haskins* v. *Haskins*, 9 Gray, 390, and *Parker* v. *Johnson*, 25 Geo., 576. The cases it must be conceded are in point, and from the high character and ability of the courts rendering the decisions, we hesitated at first whether we ought not to follow them.

In the former case a new trial was granted because the court below used the phrase "balance of probabilities," as equivalent to preponderance of proof. Bigelow, J., in giving the opinion of the court, said:—"'Balance of probabilities' is at best a vague and indefinite phrase, which would rather lead the jury to infer that they might form their verdict on a guess at the truth, gathered from the evidence, than on a real solid conviction of it, founded on a careful scrutiny and examination of the proof." In the latter case the court held that a charge to the jury that "whichever they believed the weight of probability to be they were authorized to find," was calculated to mislead the jury, and was incorrect as matter of law, because the evidence "should *so preponderate* in favor of the party for whom the verdict is rendered as to satisfy the jury that he is entitled to it."

The first mentioned case is placed upon the ground that the substituted phrase was not the equivalent of " preponderance of evidence," and that it was vague and indefinite and calculated to mislead the jury.   The case from Georgia would seem really to concede that " weight of probability " may be equivalent to " preponderance of evidence," but the chief objection is that in all cases the evidence must so preponderate as to satisfy the jury—that is, a certain *degree* of preponderance is necessary even in civil cases.   It will be noticed that this last objection lies with equal force against the use of the common expression that the jury should find for the plaintiff if they find the preponderance of evidence in his favor.   In both cases qualifying instructions would have to be given as to the degree of probability in one case or the degree of preponderance in the other; and yet in the latter case was there ever a new trial given for want of the qualification?   We submit that in civil causes it is utterly impracticable to require of the court any instructions to the jury as to the amount or degree of preponderance, and the law knows no degree in such case. The preponderance of course must be so manifest that the jury will be satisfied to found their verdict upon it.   This will always be understood without special instructions. Following out the suggestions of the Georgia case, the defendant's counsel say that the charge in the case at bar would allow the jury to find for the plaintiff though he had failed to make even a *primâ facie* case.   There is just the same and no greater danger of this than there would be under the ordinary instructions to find according to the preponderance of the evidence.   How could the jury find a thing most likely to be true, which the evidence would not sustain even if there was no opposing proof.   The rule as to the burden of proof involves the necessity of making a *primâ facie* case.

The other objection, as to the danger of misleading the jury, so strongly stated by the Massachusetts court, does not strike us as well founded, especially under the circumstances of this case, for the remarks of the judge in con-

nection with the words objected to operated, we think, to guard the jury against any mere speculation on probabilities independent of the evidence, for it was stated in substance that they must allow all the evidence to have its effect, including the presumption of innocence, and that their final conviction or belief must be a fair and honest one. And we think the test furnished to the jury by the phrase "most likely to be true," may have operated in this case even more to the advantage of the defendant than the usual language as to preponderance of proof, inasmuch as they were required to commence their investigation with the opposing presumption that what the plaintiff claimed was not likely to be true.

We have confined our attention so far to the reasons given for the decisions in Massachusetts and Georgia. The cases rest entirely on the reasons given; no authorities are cited in their support. We are able to cite in favor of the positions taken in the present case the opinions of some law writers and jurists of at least equal distinction and ability.

In 1 Best on Evidence (1st Am. from the 6th Lond. ed.), § 95, it is said : "But there is a strong and marked difference as to the effect of evidence in civil and criminal proceedings. In the former, a mere preponderance of probability, due regard being had to the burden of proof, is a sufficient basis of decision." It seems to us not a little singular that the phrase used in this masterly treatise of Mr. Best should be almost verbally identical, and entirely so in meaning, with that used in the two cases cited, and yet be so strongly condemned, especially by the Massachusetts court, as most vague, indefinite and misleading, without however referring at all to the fact that it had ever been used by so distinguished an author.

The proposition of Mr. Best, though different in words from the one we are considering, is, we submit, identical in meaning and effect, and therefore it furnishes a strong support for the position we have taken.

In *Cooper* v. *Slade*, 6 House of Lords Cases, 772, Justice WILLES says : "I may be excused for referring to an

authority in support of the elementary proposition that in civil cases the preponderance of probability may constitute sufficient ground for a verdict. I find such an authority referred to in Mr. Best's very able and instructive treatise on the principles of evidence." So long since as the 14th of Elizabeth, Chief Justice DYER and a majority of the other justices of the Common Pleas, in *Newis* v. *Lark,* Plowd., 412, laid down this distinction between pleading and evidence, "that in a writ or declaration or other pleading certainty ought to be shown, for there the party must answer to it and the court must adjudge upon it; and that which the party shall be compelled to answer to, and which is the foundation whereupon the court is to give judgment, ought to be certain, or else the party would be driven to answer to what he does not know, and the court to give judgment upon that which is utterly uncertain. But where the matter is so far gone that the parties are at issue, or that the inquest is awarded by default, so that the jury is to give a verdict one way or the other, there, if the matter is doubtful, they may found their verdict upon that which appears the most probable."

There is no error in the judgment complained of.

In this opinion the other judges concurred; except GRANGER, J., who dissented.