JOHN H. SHAUB *vs.* A. H. PHILLIPS, INC.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 4th—decided June 13th, 1933.

*Abraham A. M. Schweitzer,* with whom was *Moses A. Berman,* for the appellant (plaintiff).

*W. Arthur Countryman, Jr.,* for the appellee (defendant).

AVERY, J. The complaint in this action is in two counts; the first is based on a manager's security agreement to which the plaintiff became a party, and under which he deposited $200 with the defendant and entered its employ as manager of a store. He claims a return of the deposit on the termination of his employment, alleging that he has complied with the terms of the agreement. The second count claims damages of $200 on the ground that the defendant fraudulently represented to the plaintiff that it would take accurate inventories of the merchandise in the store managed by him, and instead defrauded him by taking false inventories and that it operated a system of cheating and defrauding store managers by such means. The case was tried to the jury and a general verdict returned in favor of the plaintiff for $200 which, on motion of the defendant, the court set aside and ordered a new trial. The only error assigned by the plaintiff in this appeal is the action of the trial court in setting aside the verdict.

The defendant operated a system of two hundred chain stores in Connecticut and Massachusetts. In March, 1931, the plaintiff applied for a position and, on April 7th, signed a store manager's agreement under which he deposited $200 with the company, to be applied against all shortages from whatever cause arising, disclosed in the accounts kept by it in the usual course of business, relating to any of its stores of which he might be in charge as manager. The agreement provided that the results of such accounts so taken with respect to shortages and overages were accepted by both parties as final and binding upon them. In case the plaintiff left the employ of the defendant, the deposit of $200 was to be returned to him with four per cent interest, less any shortages disclosed by such accounts. The plaintiff was placed in several stores

during April and May to obtain experience and, on May 27th, was placed in charge of a store at Glastonbury, remaining until July 28th, when he was discharged.

With reference to the first count of the complaint, no evidence was offered by the plaintiff showing or tending to show that he was entitled to the return of the fund in accordance with the method of determination provided in the contract; nor does the appellant make any such claim in brief or argument. The claim on this appeal is wholly confined to the charge of fraud set up in the second count of the complaint. With reference to this, there is no evidence that the plaintiff was induced to enter into the contract by any false or fraudulent representations, nor is there any direct evidence that a false inventory and account of merchandise in the store operated by the plaintiff was taken. The only evidence supporting plaintiff's claim is evidence which he contends tends to show that the defendant was operating a system of defrauding managers by inducing them to enter into these agreements, and then retaining their money under the pretense of a shortage in their accounts, and that the claimed shortage in the plaintiff's account was part of this system. In support of this contention, the plaintiff testified that he was not informed of any shortage until, after the taking of several inventories by defendant's agents, he was confronted with a claim substantially exhausting the amount of his cash deposit, and was then given the choice of making up the amount forthwith or being discharged. He also testified that the amount increased at different interviews after the final inventory.

It is undisputed in the evidence that during the two months period while plaintiff was in charge of the Glastonbury store, six inventories were taken. One on July 15th showed a shortage of $109.63; another taken

July 21st an additional shortage of $60.28; and another taken one week later a further shortage of $32.49. The method of taking these inventories was by an actual count of the merchandise in the store by an employee of the company, on a specially prepared tally sheet which was forwarded to the main office at Springfield, Massachusetts, where the computations were made. The employee taking the inventory had nothing to do with the computations. The plaintiff was in charge of the Glastonbury store when the inventories were taken, and there is no evidence that the inventories were inaccurate or that the computations therefrom were incorrect, much less intentionally and fraudulently so. In further support of this contention, the plaintiff produced five former managers of defendant's stores, some of whom testified that they had been permitted to operate in apparent security without notice of any claim of shortage, to a point where such a claim was advanced substantially exhausting their cash deposits. One of them testified that by taking his own inventory after hours, he was able to show that the one taken by the company's agents was incorrect; another testified that one of the company's inspectors had advised him to shortweight customers in order to avoid shortage in certain bulk goods; another testified that an inspector of the company had told him that the office could fix accounts so that a manager would not get back a dime. There was testimony that inventories were taken on busy days in stores or while a special sale was going on. All of the above testimony related to persons and officers of the company who, so far as appears by the evidence, had nothing to do with the plaintiff in his store.

Viewing the testimony in the light most favorable to the plaintiff, it goes no further than to show that these former managers had been discharged when they

believed that their accounts were not short, and that there was a reasonable possibility of error in the method of taking the inventories. It falls far short of furnishing a reasonable foundation upon which the jury could find that the defendant was operating a system of defrauding persons by inducing them to enter into management contracts and deposit money, and then retaining the money under claim of a shortage in their accounts, and of thereby furnishing a reasonable basis for the conclusion that the plaintiff had been defrauded in pursuance of the operation of this system. "Fraud is not to be presumed, but must be strictly proven. The evidence must be clear, precise and unequivocal." *Basak* v. *Damutz*, 105 Conn. 378, 382, 135 Atl. 453. Inasmuch as the jury, acting as reasonable men, could not, upon the evidence, have arrived at a verdict in the plaintiff's favor, the court did not err in setting it aside. *Roma* v. *Thames River Specialties Co.*, 90 Conn. 18, 21, 96 Atl. 169; *Bates* v. *Carroll*, 99 Conn. 677, 678, 122 Atl. 562; *Levy* v. *Bromberg*, 108 Conn. 202, 204, 142 Atl. 846; *Orsillo* v. *Russo*, 113 Conn. 727, 729, 156 Atl. 862.

There is no error.

In this opinion the other judges concurred.