WILLIAM A. STUART ET AL. *v.* KENNETH J.
STUART, JR., ET AL.
(SC 18324)

Norcott, Katz, Palmer, Zarella and Beach, Js.

Argued February 22—officially released June 22, 2010

28

*Sandra J. Akoury*, with whom, on the brief, was *Paul J. Pacifico*, for the appellants (plaintiffs).

*William F. Gallagher*, for the appellee (named defendant).

*Opinion*

ZARELLA, J. In this certified appeal,[1] we are called on to determine what standard of proof applies to statutory theft claims brought pursuant to General Statutes § 52-564.[2] The plaintiffs, William A. Stuart and Jonathan Stuart, appeal from the judgment of the Appellate Court, which upheld the trial court's application of the clear and convincing standard of proof to the plaintiffs' statutory theft claim against the named defendant, Kenneth J. Stuart, Jr.[3] *Stuart* v. *Stuart*, 112 Conn. App. 160, 176, 962 A.2d 842 (2009). In their appeal, the plaintiffs assert that the proper standard of proof to be applied to statutory theft claims under § 52-564 is the preponderance of the evidence standard. We agree with the plaintiffs

---

[1] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly affirm the trial court's application of the 'clear and convincing' standard of proof to claims brought pursuant to General Statutes § 52-564?" *Stuart* v. *Stuart*, 290 Conn. 920, 966 A.2d 237 (2009).

[2] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[3] Kenneth J. Stuart, Jr., is the brother of each of the plaintiffs. The plaintiffs also asserted claims against Deborah Christman, Kenneth J. Stuart, Jr.'s wife; Christman Stuart Interiors, LLC, a business owned by Christman and Kenneth J. Stuart, Jr.; and Stuart & Sons, L.P. Because this appeal only concerns the plaintiffs' statutory theft claim, which was asserted against Kenneth J. Stuart, Jr., only, we refer to Kenneth J. Stuart, Jr., as the defendant throughout this opinion.

and, accordingly, reverse in part the judgment of the Appellate Court.

The following relevant facts and procedural history are set forth in the opinion of the Appellate Court. "The plaintiffs and [the defendant], are the only children and heirs of Kenneth J. Stuart, Sr. (Stuart, Sr.). In 1991, Stuart, Sr., executed an estate plan including the establishment and funding of a trust and the execution of a will that, upon his death, would have distributed his assets equally among his three sons. Stuart, Sr., had been the art director of Curtis Publishing Company, the publisher of The Saturday Evening Post, and, subsequently, the art director of . . . Reader's Digest. He had collected many antiques and [amassed] a significant art collection, including several famous works by Norman Rockwell.

"In July, 1992, Stuart, Sr., was admitted to Norwalk Hospital. At that time, he was unable to give a medical history, and the hospital records indicated that he was suffering from a deteriorating mental condition. His physical and mental health progressively worsened until his death in February, 1993. Less than four months before his death, a series of transactions took place that materially altered the estate plan. On November 4, 1992, Stuart, Sr., and [the defendant] executed documents that formed Stuart & Sons, L.P. They were the only general partners; the plaintiffs had no interest in the partnership and were not aware that it had been created. Stuart, Sr., by bill of sale, conveyed most of his personal property to the partnership. [The defendant], as trustee, through various transactions, transferred properties located in Wilton at Ridgefield Road, the former residence of Stuart, Sr., and at Hurlbutt Street, a new acquisition by the trust, to the partnership. As a consequence of those transactions, almost all of the assets of Stuart, Sr., were owned by the partnership, and the trust had few or no assets.

"Sometime in August, 1993, after the death of Stuart, Sr., [the defendant] told the plaintiffs about the creation and funding of Stuart & Sons, L.P. The partnership leased the Ridgefield Road and Hurlbutt Street properties and collected the rents. It acquired two additional properties in Wilton and, in 1993, formed a limited liability company to own a furniture store in Wilton known as Eldred Wheeler of Wilton, LLC . . . which later became known as Talbot House. In 1995, [the defendant] hired [Deborah] Christman to manage the furniture business. In June, 2000, they married. At about that time, Talbot House closed its business, and [the defendant] and Christman opened a new business, Christman Stuart Interiors, LLC, in Ridgefield. A portion of the inventory of Talbot House was transferred to Christman Stuart Interiors, LLC.

"From 1991 to 2003, thousands of transactions were undertaken by [the defendant], as trustee, executor and general partner of Stuart & Sons, L.P. Most of the transactions occurred as part of the operations of the partnership, including its sale of the Hurlbutt Street property to [the defendant], and Christman for $900,000 in April, 2001.[4] During that twelve year period, [the defendant] commingled funds and assets of the trust and the partnership and his own assets to such an extent as to hinder any proper accounting. His failure to keep adequate records and his use of the trust assets for his benefit further complicated any accurate accounting of his fiduciary obligations.

"The plaintiffs commenced the present action in 1994. In their operative nine count complaint filed March 10, 2003, the plaintiffs alleged that [the defendant] exercised undue influence over Stuart, Sr., when real estate

---

[4] "Immediately thereafter, [the defendant] conveyed his interest in the Hurlbutt Street property to Christman." *Stuart* v. *Stuart*, supra, 112 Conn. App. 167 n.3.

was purchased with trust assets and when Stuart & Sons, L.P., was created and funded, and that Stuart, Sr., lacked the mental capacity to understand those transactions. They additionally alleged that [the defendant] breached his fiduciary duties as trustee, executor and general partner by mismanaging assets, failing to maintain records and self-dealing. The plaintiffs further claimed that the transfer by [the defendant] of the Hurlbutt Street property to Christman was a fraudulent conveyance, that the actions of [the defendant] constituted statutory theft pursuant to . . . § 52-564 and that [the defendant], Christman and Christman Stuart Interiors, LLC, had been unjustly enriched by the misappropriation of the assets of the trust and estate. In their prayer for relief, the plaintiffs requested that the court impose a constructive trust on the assets of Stuart & Sons, L.P., set aside the conveyance of the Hurlbutt Street property, award accounting fees and award money damages, including treble damages [pursuant to § 52-564] and attorney's fees.

"During a twenty-five day trial, the court heard testimony from several witnesses and admitted twelve boxes of exhibits. Following trial, the parties submitted extensive . . . briefs summarizing their respective positions. On June 28, 2004, the court issued its seventy-eight page memorandum of decision in which it painstakingly evaluated the evidence with respect to each of the plaintiffs' claims and set forth the applicable remedies. The court made the following findings and conclusions with respect to the plaintiffs' claims: (1) Stuart, Sr., was not mentally competent to execute the partnership documents and the other instruments that transferred his assets into Stuart & Sons, L.P., in November, 1992; (2) the creation of the partnership and the resulting transfer of assets was the result of undue influence by [the defendant] over Stuart, Sr.; (3) [the defendant] owed a fiduciary duty to the plaintiffs in his

capacities as trustee, executor and general partner of Stuart & Sons, L.P., the limited partnership that acquired almost all of the assets of Stuart, Sr.; (4) [the defendant] breached his fiduciary duties through the commingling of funds and assets, by failing to maintain adequate records of his stewardship and by using trust assets for his benefit; (5) [the defendant] proved by clear and convincing evidence that certain expenditures were business related and were not improper personal expenditures; (6) the transfer of the Hurlbutt Street property to [the defendant] and Christman for the consideration of $900,000 did not constitute improper self-dealing; (7) the plaintiffs failed to meet their burden of proof on their fraudulent conveyance claim; (8) the plaintiffs were required to prove their statutory theft claim by clear and convincing evidence; and (9) Christman Stuart Interiors, LLC, was unjustly enriched in the amount of $118,671, and was entitled to a setoff of $68,621.48.

"On the basis of those findings and conclusions, the court set forth the following remedies: (1) the creation of Stuart & Sons, L.P., was declared null and void; (2) all assets and liabilities of the partnership were to be transferred to the estate of Stuart, Sr., and a constructive trust was established over an undivided two-thirds of the assets and liabilities until the transfer was completed; (3) damages for the breach of fiduciary duties by [the defendant] totaled $1,062,332.25, and he was to pay that amount to the estate of Stuart, Sr.; (4) the plaintiffs' claim for [the] fraudulent transfer of the Hurlbutt Street property was dismissed; (5) with respect to the plaintiffs' statutory theft claim, [the trial court determined that $248,226.25 of the damages previously awarded for the plaintiffs' breach of fiduciary claims qualified for trebling under § 52-564 and, accordingly] an additional award of $496,452.50 . . . was to be paid to the estate of Stuart, Sr.;[5] (6) Christman Stuart Interi-

[5] It appears that the trial court proceeded in this fashion so as not to double count the $248,226.25 in its total award of damages.

ors, LLC, was unjustly enriched in the amount of $50,049.52, payable to the estate of Stuart, Sr.; (7) an award of attorney's fees was made, but the amount was to be determined at a subsequent hearing; (8) prejudgment interest in the amount of $636,743.63, calculated at a rate of 7.5 percent [per annum], was awarded to the estate of Stuart, Sr., for the breach of fiduciary duty claims; and (9) an award of $180,000, for accounting fees, incurred to prove the breach of fiduciary duty claims, was to be paid to the estate of Stuart, Sr. Accordingly, the [trial] court rendered judgment for money damages against [the defendant] in the amount of $2,375,528.38, and against Christman Stuart Interiors, LLC, in the amount of $60,539.19, to be paid to the estate of Stuart, Sr." Id., 165–69.

In addition, in recognition of the fact that the issue of the proper standard of proof to be applied to statutory theft claims was then pending before this court in *Howard* v. *MacDonald*, 270 Conn. 111, 851 A.2d 1142 (2004),[6] the trial court determined what additional damages would be subject to trebling if the preponderance of the evidence standard were applied to the plaintiffs' claim. The trial court concluded that, "under the lesser standard, the amount of $490,755 in nonexistent credit [that the defendant] had applied to pay for his share of the Hurlbutt Street [property] . . . would qualify as damages to be trebled." (Citation omitted.)

Thereafter, the defendant appealed and the plaintiffs cross appealed to the Appellate Court from the judgment of the trial court.[7] In their cross appeal, the plaintiffs claimed, inter alia, that the trial court awarded

---

[6] We did not decide this issue in *Howard* because we concluded that, even under the heightened standard of proof, the plaintiff had "provided sufficient evidence that the jury reasonably could have believed to support its conclusion that the defendant had committed statutory theft . . . ." *Howard* v. *MacDonald*, supra, 270 Conn. 130.

[7] The defendant subsequently withdrew his appeal to the Appellate Court.

them insufficient damages because it improperly had required them to prove their statutory theft claim under § 52-564 by clear and convincing evidence.[8] *Stuart* v. *Stuart*, supra, 112 Conn. App. 173. The plaintiffs argued that the proper standard of proof for claims asserted under that statute is the preponderance of the evidence standard. Id. The Appellate Court disagreed, concluding that its decision in *Schaffer* v. *Lindy*, 8 Conn. App. 96, 105, 511 A.2d 1022 (1986), which held that the clear and convincing evidence standard applied to claims brought pursuant to § 52-564, never had been overruled. *Stuart* v. *Stuart*, supra, 175–76. Accordingly, the Appellate Court upheld the trial court's application of that standard in the present case; id., 176; and affirmed the trial court's judgment. Id., 190. This certified appeal followed.

The plaintiffs claim that the proper standard of proof for statutory theft claims is the preponderance of the evidence standard. In support of their claim, the plaintiffs claim that, although § 52-564 does not specify what standard of proof is to be applied, when the legislature has not imposed a different standard of proof by statute, courts are to construe the applicable standard of proof

---

[8] The plaintiffs also claimed that their award of damages was insufficient because the trial court (1) "failed to shift the burden of proof to [the defendant] with respect to certain transactions undertaken in his fiduciary capacities"; *Stuart* v. *Stuart*, supra, 112 Conn. App. 164; (2) "failed to render judgment in their favor on the fraudulent transfer count"; id.; (3) "awarded prejudgment interest at the rate of 7.5 percent instead of 10 percent"; id.; (4) "concluded that Christman Stuart Interiors, LLC, was entitled to a setoff even though it had not pleaded the right of setoff in its answer"; id.; (5) "failed to award additional damages despite the submission of sufficient evidence"; id., 164–65; (6) "failed to disinherit [the defendant] from [Stuart, Sr.'s] estate"; id., 165; (7) "precluded [the plaintiffs] from presenting detailed evidence on the issue of damages"; id.; and (8) "awarded attorney's fees, accounting fees and prejudgment interest to [Stuart, Sr.'s] estate rather than to [the plaintiffs] individually." Id. The Appellate Court affirmed the judgment of the trial court with respect to each of these claims. These claims are not before us in this certified appeal.

to be the general civil standard, that is, the preponder-
ance of the evidence standard. In addition, the plaintiffs
argue that certain dictum in our decision in *Freeman*
v. *Alamo Management Co.*, 221 Conn. 674, 682–83, 607
A.2d 370 (1992), clearly indicates that the Appellate
Court's holding in *Schaffer* v. *Lindy*, supra, 8 Conn.
App. 96, is unsound.

The defendant responds that the Appellate Court
properly upheld the trial court's application of the clear
and convincing evidence standard to the plaintiffs' stat-
utory theft claim. First, the defendant argues that *Schaf-
fer* never has been overruled and that the weight of
Connecticut authority has applied the clear and con-
vincing standard of proof. Specifically, the defendant
argues that, after our decision in *Freeman*, numerous
Superior and Appellate Court cases have followed the
holding in *Schaffer* and that the legislature has acqui-
esced in that holding because it has taken no steps to
modify the statute since *Schaffer* was decided in 1986.
In addition, the defendant claims that this court has
"permitted" the Appellate Court and the Superior Court
to apply the clear and convincing standard of proof to
claims under § 52-564 in declining to decide the issue
of the applicable standard of proof in *Howard* v. *Mac-
Donald*, supra, 270 Conn. 111. Second, the defendant
claims that there are significant public policy reasons
that support the application of the clear and convincing
standard of proof. In particular, the defendant claims
that § 52-564, which provides for an award of treble
damages, is akin to "a punitive sanction," and "punitive
sanctions historically have fallen under the purview of
the state in enforcing its criminal laws." Moreover, the
defendant claims that the heightened standard of proof
is appropriate in light of the "serious consequences" and
"harsh or far-reaching effects" that an adverse finding
would have on defendants. (Internal quotation marks
omitted.) Finally, the defendant argues that other juris-

dictions that have addressed similar issues have applied the clear and convincing standard of proof. We agree with the plaintiffs and respond to each of the defendant's arguments in turn.

The issue of what standard of proof is applicable to statutory theft claims brought pursuant to § 52-564 initially presents a question of statutory interpretation, over which our review is plenary. See, e.g., *State* v. *Juan L.*, 291 Conn. 556, 566, 969 A.2d 698 (2009); see also *Smith* v. *Muellner*, 283 Conn. 510, 536, 932 A.2d 382 (2007) ("[w]hen a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law" [internal quotation marks omitted]).

"The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply . . . ." (Internal quotation marks omitted.) *Saunders* v. *Firtel*, 293 Conn. 515, 525, 978 A.2d 487 (2009). "In seeking to determine [the] meaning [of a statute], General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Id. "When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 66, 946 A.2d 862 (2008). "The test to determine ambiguity is whether the statute, when

read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Weems* v. *Citigroup, Inc.*, 289 Conn. 769, 779, 961 A.2d 349 (2008).

We begin our analysis with the language of the statute. General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." The statute is silent with respect to what standard of proof is to be applied. Although "[statutory] silence does not . . . necessarily equate to ambiguity"; *Manifold* v. *Ragaglia*, 272 Conn. 410, 419, 862 A.2d 292 (2004); in the present case, we conclude that this silence renders the statute ambiguous with respect to the applicable standard of proof because there is more than one plausible interpretation of its meaning. See, e.g., *Robinson* v. *Gailno*, 275 Conn. 290, 298–99, 880 A.2d 127 (2005) (statutory silence created ambiguity when more than one plausible meaning could be gleaned from text). Accordingly, we may consider the full panoply of available materials with which to interpret the statute.

The legislative history of § 52-564 sheds no light on the legislature's intent regarding the applicable standard of proof. There is no written legislative history dating back to the 1800s, when this statute first was enacted, and the legislative history relating to the statute's later amendments likewise offers no insight into the legislature's intent with respect to this issue. We therefore turn to other existing legislation and common-law principles for interpretive guidance.

It is well established that "[t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or *non-action* will have [on] any one of them." (Emphasis added; internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New*

*London,* 236 Conn. 710, 717, 674 A.2d 845 (1996). With regard to nonaction, "the general rule [is] that when a civil statute is silent as to the applicable standard of proof, the preponderance of the evidence standard governs factual determinations required by that statute." *State* v. *Davis,* 229 Conn. 285, 295–96, 641 A.2d 370 (1994). This rule applies equally to statutes that provide for multiple damages. See *Freeman* v. *Alamo Management Co.,* supra, 221 Conn. 683 (applying preponderance of evidence standard to claim for statutory punitive damages under General Statutes §§ 47a-43 and 47a-46 and stating that "[a]bsent evidence of legislative intent to the contrary, we continue to presume that when a statutory private right of action includes multiple damages, the plaintiff's burden of proof is the same as that in other tort cases"); see also *Nielsen* v. *Wisniewski,* 32 Conn. App. 133, 137–38, 628 A.2d 25 (1993) (applying preponderance of evidence standard to claim for punitive damages under Connecticut Unfair Trade Practices Act pursuant to General Statutes § 42-110g). Accordingly, when the legislature has intended to impose a different standard of proof in a civil statute, it has seen fit to include explicit language in the statute to effectuate that intent. The General Statutes are replete with such examples.[9] Clearly, then, the legisla-

---

[9] See, e.g., General Statutes § 7-294d (c) (2) (grounds for canceling or revoking police officer's certificate must be established by clear and convincing evidence); General Statutes § 12-802 (b) (grounds for removal of director of Connecticut Lottery Corporation must be established by clear and convincing evidence); General Statutes § 16-8a (c) (3) (clear and convincing evidence required to rebut presumption of retaliation when adverse employment action is taken following report by employee of public service company of substantial misfeasance, malfeasance or nonfeasance); General Statutes § 17a-77 (e) (court may issue order of commitment with respect to child if it finds by clear and convincing evidence that child suffers from mental disorder, is in need of hospitalization for treatment, such treatment is available, and such hospitalization is least restrictive alternative available); General Statutes § 17a-111b (a) and (b) (commissioner of children and families shall make reasonable efforts to reunify parent with child unless court finds by clear and convincing evidence certain aggravated circumstances); General Statutes § 17a-112 (i) (court must find grounds for consensual termi-

ture knows how to impose a heightened standard of

nation of parental rights by clear and convincing evidence); General Statutes § 17a-210 (c) (when any resident of facility operated by department of development services, or parent, guardian, conservator or legal representative thereof, objects to proposed transfer of resident to another facility, proponent of transfer must establish by clear and convincing evidence that transfer is in resident's best interest); General Statutes § 17a-274 (g) (involuntary placement by department of developmental services requires fact of mental retardation and other criteria to be proven by clear and convincing evidence); General Statutes § 17a-685 (d) (court must find that ground or grounds for involuntary commitment have been established by clear and convincing evidence); General Statutes § 19a-265 (j) (director of health must establish grounds for emergency commitment orders relating to tuberculosis control by clear and convincing evidence); General Statutes § 19a-343a (g) (in actions to abate public nuisance in which defendant financial institution is record owner of subject property or has recorded interest therein, state has burden of proving by clear and convincing evidence that such defendant is principal or accomplice in alleged conduct constituting public nuisance before court can enter order against it); General Statutes § 19a-343e (a) (if court finds by clear and convincing evidence that public nuisance exists, court may enter such orders as justice requires to abate public nuisance); General Statutes § 19a-580c (a) ("[w]ith respect to any communication of a patient's wishes [regarding life support or other medical treatment] other than by means of a document executed in accordance with sections 19a-575 and 19a-575a, the court shall consider whether there is clear and convincing evidence of such communication"); General Statutes § 29-38c (d) (state must prove grounds for seizure of firearms from person posing risk of imminent injury to himself or others by clear and convincing evidence); General Statutes § 36a-290 (b) (clear and convincing evidence required to rebut presumption of intent to create right of survivorship when joint bank account is created); General Statutes § 45a-573a (provisions of General Statutes § 45a-573 regarding limitations on powers of appointment shall apply to all wills and trusts unless, inter alia, contrary intention of donor is demonstrated by clear and convincing evidence); General Statutes § 45a-610 (court must find grounds for removal of parent as guardian by clear and convincing evidence); General Statutes § 45a-676 (a) (court must find grounds for appointment of plenary guardian for persons with mental retardation by clear and convincing evidence); General Statutes § 45a-699 (b) (court may grant application for sterilization of person under guardianship or conservatorship only when it finds by clear and convincing evidence that such operation or procedure is in that person's best interests); General Statutes § 46b-160 (a) (4) (court may order temporary child support upon finding of clear and convincing evidence of paternity); General Statutes § 49-35b (b) (2) (B) (invalidity of mechanic's lien must be established by clear and convincing evidence); General Statutes § 54-33g (b) (state has burden of proving all material facts relating to property seizure by clear and convincing evidence); General

proof when it so intends. See, e.g., *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 299, 933 A.2d 256 (2007) (legislature knows how to convey its intent expressly). We therefore conclude that the absence of statutory language in § 52-564 regarding the applicable standard of proof evidences the legislature's intent that the preponderance of the evidence standard be applied. See *Saunders* v. *Firtel*, supra, 293 Conn. 527 ("when a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]).

We are aware, however, of one notable exception to the general rule. The Uniform Fraudulent Transfer Act (act), General Statutes § 52-552a et seq., is silent with respect to the applicable standard of proof; nevertheless, Connecticut courts have applied the clear and convincing standard of proof to claims brought pursuant to the act. See, e.g., *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 125–26, 981 A.2d 1068 (2009); *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 307, 580 A.2d 1212 (predecessor to § 52-552a), cert. denied, 217 Conn. 803, 584 A.2d 471 (1990). Our case law, however, is not clear as to why the heightened standard is imposed. One possible explanation is that the original fraudulent conveyance statute was intended to be a codification of English common-law principles relating to the interpretation of "the statute of the 13th of Elizabeth, chap. 5"; *Benton* v. *Jones*, 8. Conn. 186, 189 (1830); and, at common law, fraud must be proven by clear and convincing evidence. See, e.g., *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 330, 593

Statutes § 54-56d (k) (2) (court must find grounds for ordering involuntary medication of criminal defendant by clear and convincing evidence); General Statutes § 54-64f (b) (court must find violation of conditions of release from imprisonment by clear and convincing evidence before imposing different or additional conditions of release or before revoking release).

A.2d 478 (1991). Similarly, the act presently provides that "the principles of law and equity, including . . . the law relating to . . . *fraud* . . . supplement the provisions of [the act]." (Emphasis added.) General Statutes § 52-552k.

In the present case, § 52-564 does not contain any language similar to that used by the legislature in § 52-552k, which supplements the act with principles of law and equity relating to fraud. Accordingly, we conclude that the statutes are distinguishable and should be interpreted differently. In reaching this conclusion, we are mindful that "[s]tatutory theft under . . . § 52-564 is synonymous with larceny [as defined in] General Statutes § 53a-119"; (internal quotation marks omitted) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 44, 761 A.2d 1268 (2000); and the definition of larceny includes various fraudulent methods of taking property from its owner.[10] Nevertheless, it is well established

---

[10] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:

\* \* \*

"(2) Obtaining property by false pretenses. A person obtains property by false pretenses when, by any false token, pretense or device, he obtains from another any property, with intent to *defraud* him or any other person.

"(3) Obtaining property by false promise. A person obtains property by false promise when, pursuant to a *scheme to defraud*, he obtains property of another . . . .

\* \* \*

"(6) Defrauding of public community. A person is guilty of *defrauding* a public community who . . . (B) knowingly accepts the benefits from a claim he knows is false . . . .

"(7) Theft of services. A person is guilty of theft of services when . . . (B) . . . (ii) . . . he obtains [the] use [of a certain equipment without payment] by means of any false or *fraudulent representation, fraudulent concealment*, false pretense or personation, trick, artifice or device . . . .

\* \* \*

"(11) Obtaining property through fraudulent use of an automated teller machine. A person obtains property through *fraudulent* use of an automated teller machine when such person obtains property by knowingly using in a

that "[n]o higher standard of proof is required when a plaintiff seeks to prove criminal activity in a civil action . . . ." *Freeman* v. *Alamo Management Co.*, supra, 221 Conn. 682. In addition, a review of our case law on the development of the standard of proof in fraud actions compels us to question the soundness of those prior decisions, although we need not decide in the present case whether they should be overruled. Specifically, it appears that the standard of proof for fraud vacillated several times in the 1920s and 1930s between the preponderance of the evidence standard and the clear and convincing standard, with no explanation ever being given for the imposition of the higher standard of proof. See *Kilduff* v. *Adams, Inc.*, supra, 219 Conn. 327–28 n.14 (surveying cases). Moreover, it does not appear that any of the typical explanations offered for the imposition of a higher standard of proof played a role in our decisions.[11] Id. Consequently, we are loath to extend

fraudulent manner an automated teller machine with intent to deprive another of property . . . .

\* \* \*

"(15) Theft of utility service. A person is guilty of theft of utility service when he intentionally obtains [utility service] . . . (A) . . . through *fraudulent statements*, to avoid payment for the service by himself or another person . . . .

"(16) Air bag fraud. A person is guilty of air bag *fraud* when such person, with intent to *defraud* another person, obtains property from such other person or a third person by knowingly installing or reinstalling any object in lieu of an air bag . . . ." (Emphasis added.)

[11] In *Kilduff*, we stated: "The following reasons are commonly cited as justification for requiring a more exacting burden of proof in fraud actions: (1) fraud usually must be proven through the use of circumstantial evidence so that a heightened standard is imposed to reflect the latitude allowed in admitting evidence of fraud; *Disner* v. *Westinghouse Electric* [*Corp.*], 726 F.2d 1106, 1110 (6th Cir. 1984); *Smith* v. *Rhode Island Co.*, 39 R.I. 146, 154, 98 A. 1 (1916); 37 Am. Jur. 2d, Fraud and Deceit § 468, p. 646; 37 C.J.S., Fraud § 114, p. 431; (2) evidence of fraud must be sufficient to overcome the presumption that people are innocent of moral turpitude or crime; *Verrastro* v. *Middlesex Ins. Co.*, 207 Conn. 179, 183, 540 A.2d 693 (1988); [see also] *Apolito* v. *Johnson*, 3 Ariz. App. 232, 236, 413 P.2d 291, modified on other grounds, 3 Ariz. App. 358, 414 P.2d 442 (1966); 37 C.J.S., Fraud § 114, p. 430; (3) in equity cases, a higher burden of proof is imposed to justify the availability of broader remedies than those available in an action

at law for damages; *Batka* v. *Liberty Mutual Fire Ins. Co.*, 704 F.2d 684, 688 (3d Cir. 1983) (applying New Jersey law); C. McCormick, Evidence (3d Ed. [1984]) § 340; and (4) a person found guilty of fraudulent conduct suffers a 'stigma of guilt' regardless of whether the underlying action was civil or criminal. *Riley Hill General Contractor, Inc.* v. *Tandy [Corp.]*, 303 Or. 390, 407, 737 P.2d 595 (1987).

"A review of the case law on the development of the burden of proof in fraud actions sheds no light on which, if any, of these factors were determinative in this court's adoption of the 'clear, precise and unequivocal' standard. In *Basak* v. *Damutz*, 105 Conn. 378, 382–83, 135 A. 453 (1926), we applied the 'clear, precise and unequivocal' standard to the plaintiff's claim that the defendant was equitably estopped from denying ownership of certain land on the ground that the defendant was party to a fraudulent conveyance. That standard was applied for the first time to an action at law for damages resulting from fraud in *Shaub* v. *Phillips, Inc.*, 117 Conn. 54, 58, 166 A. 671 (1933), citing *Basak* v. *Damutz*, supra, 382. *Shaub* implicitly overruled prior case law in which we had indicated that fraud need be proven only by a preponderance of the evidence. *Daly Bros., Inc.* v. *Spallone*, 114 Conn. 236, 240–43, 158 A. 237 (1932); see *Bennett* v. *Gibbons*, 55 Conn. 450, 454, 12 A. 99 (1887); cf. *Water Commissioners* v. *Robbins*, 82 Conn. 623, 640, 74 A. 938 (1910) (fraud must be proven by 'clear, strong, natural, and logical' evidence, but the fact that fraud is not to be presumed does not add to the plaintiff's burden of proof). The *Shaub* court, however, gave no explanation of why it was imposing the higher standard. *Shaub* v. *Phillips, Inc.*, supra [58].

"It does not appear that any of the four reasons noted [previously] provide a clear explanation for our imposition of a higher burden of proof. We had recognized the latitude allowed in the admission of evidence of fraudulent conduct long before we imposed a higher burden of proof in fraud actions. See, e.g., *Robert* v. *Finberg*, 85 Conn. 557, 562, 84 A. 366 (1912); *Hoxie* v. *Home Ins. Co.*, 32 Conn. 21, 37 (1864). Similarly, our recognition of the role played by circumstantial evidence in proving fraud predates our decision in *Shaub* . . . . See, e.g., *Sallies* v. *Johnson*, 85 Conn. 77, 80–81, 81 A. 974 (1911).

"We have also rejected the suggestion that proof of criminal activity in a civil action requires a more stringent quantum of proof. *Verrastro* v. *Middlesex Ins. Co.*, supra, [207 Conn.] 183, citing *Mead* v. *Husted*, 52 Conn. 53 (1884), and *Munson* v. *Atwood*, 30 Conn. 102 (1861). Similarly, we have stated that the fact that fraud is not to be presumed does not serve to increase the burden of proof otherwise applicable to a plaintiff in a fraud action. *O'Dea* v. *Amodeo*, 118 Conn. 58, 60, 170 A. 486 (1934); *Water Commissioners* v. *Robbins*, supra [82 Conn. 640]. Moreover, this rule was part of our law [whereas] the preponderance of the evidence standard was still the burden of proof in fraud actions. See *Morford* v. *Peck*, 46 Conn. 380, 384–85 (1878); *Huntington* v. *Clark*, 39 Conn. 540, 557 (1873).

"The third rationale for imposing a higher burden of proof for fraud was clearly not relevant in the development of our case law. Ever since the 'clear, precise and unequivocal standard' was first applied to an action at law for fraud in *Shaub* . . . we have required a higher burden in legal as

the application of the clear and convincing standard of proof further, to claims brought pursuant to § 52-564. In the absence of a statutory mandate, the proper standard of proof, therefore, is the preponderance of the evidence standard. We therefore overrule the Appellate Court's decision in *Schaffer* v. *Lindy*, supra, 8 Conn. App. 105, with respect to this issue.

We next address the defendant's arguments in support of his claim that the clear and convincing standard of proof should apply to statutory theft claims. The defendant first argues that the Appellate Court's decision in *Schaffer* never has been overruled and that the weight of Connecticut authority has applied the clear and convincing standard of proof. The defendant specifically argues that (1) although our decision in *Freeman* was critical of *Schaffer*, it did not overrule it, and, since *Freeman* was decided, numerous Superior and Appellate Court cases have followed the holding in *Schaffer*, (2) the legislature has acquiesced in the Appellate Court's holding in *Schaffer*, it having taken no steps to modify § 52-564 since *Schaffer* was decided in 1986, and (3) this court has "permitted" the Appellate Court and the Superior Court to apply the clear and convincing standard of proof to claims under § 52-564 by declining to decide the issue of the applicable standard of proof in *Howard* v. *MacDonald*, supra, 270 Conn. 130. We are unpersuaded by these arguments.

well as equitable actions. See, e.g., *Miller* v. *Appleby*, 183 Conn. 51, 55, 438 A.2d 811 (1981); *DeLuca* v. *C. W. Blakeslee & Sons, Inc.*, 174 Conn. 535, 546, 391 A.2d 170 (1978); *Creelman* v. *Rogowski*, 152 Conn. 382, 384, 207 A.2d 272 (1965). Finally, although we have never discussed the stigma attached to allegations of fraud, it is not clear whether this rationale is distinct from the previously noted presumption that one is innocent of criminal or morally base acts." (Citations omitted.) *Kilduff* v. *Adams, Inc.*, supra, 219 Conn. 327–29 n.14.

Less than one year after our decision in *Kilduff*, we formally rejected the premise that the risk of stigmatization of the defendant requires a higher standard of proof to be imposed on the plaintiff. See *Freeman* v. *Alamo Management Co.*, supra, 221 Conn. 681–82.

First, it is of no import that the Superior Court and the Appellate Court have continued to apply the holding in *Schaffer* after *Freeman* was decided. Although we explicitly stated in *Freeman* that we disagreed with the Appellate Court's conclusion in *Schaffer*; *Freeman* v. *Alamo Management Co.*, supra, 221 Conn. 682–83; that statement was dictum and had no binding effect because *Freeman* and *Schaffer* concerned different statutes and the statement went beyond the issue involved in *Freeman*. See id., 675 (determining whether entitlement to statutory damages under § 47a-46 may be established by preponderance of evidence). See generally *Valeriano* v. *Bronson*, 209 Conn. 75, 91, 546 A.2d 1380 (1988) ("discussion in a judicial opinion that goes beyond the facts involved in the issues is mere dictum and does not have the force of precedent"). Accordingly, we would expect that the Superior Court would continue to apply the holding of *Schaffer*, as it must. See, e.g., *Ferrigno* v. *Cromwell Development Associates*, 44 Conn. App. 439, 443, 689 A.2d 1150 (1997) (Appellate Court decisions are "controlling precedent until overruled or qualified" [internal quotation marks omitted]), aff'd, 244 Conn. 189, 708 A.2d 1371 (1998). Similarly, we would expect that the Appellate Court would continue to apply its holding in *Schaffer* unless it was asked to decide the same issue in a subsequent appeal and "a clear showing [is made] that [the] established rule is incorrect and harmful . . . ." Id.; see also *State* v. *DiFano*, 109 Conn. App. 679, 687, 952 A.2d 848 ("[Appellate] [C]ourt's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." [Internal quotation marks omitted.]), cert. denied, 289 Conn. 937, 958 A.2d 1246 (2008). In any event, it is manifest to our hierarchical judicial system that this court has the final say on matters of Connecticut law and that the Appellate Court

and Superior Court are bound by our precedent. See, e.g., *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 195, 676 A.2d 831 (1996) ("[i]t is axiomatic that a trial court is bound by Supreme Court precedent"); *Martin* v. *Plainville*, 40 Conn. App. 179, 182, 669 A.2d 1241 (1996) (Appellate Court, as intermediate court, is prevented from "reexamining or reevaluating Supreme Court precedent"), aff'd, 240 Conn. 105, 689 A.2d 1125 (1997); *Lash* v. *Aetna Casualty & Surety Co.*, 36 Conn. App. 623, 624, 652 A.2d 526 (1995) (Appellate Court is "bound by Supreme Court precedent"), aff'd, 236 Conn. 318, 673 A.2d 84 (1996). Accordingly, it is inconsequential to our analysis whether the weight of Connecticut authority in lower court cases has applied the clear and convincing standard of proof.

The defendant's argument concerning legislative acquiescence also is unavailing. We have recognized that "legislative inaction [following our interpretation of a statute] is not necessarily legislative affirmation . . . ." (Internal quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 521, 949 A.2d 1092 (2008). Indeed, we frequently have stated that "legislative inaction is not always the best of guides to legislative intent." (Internal quotation marks omitted.) Id., 522. Thus, we occasionally have overruled both civil and criminal cases involving the construction of statutes, "even when the legislature has had numerous occasions to reconsider [our] interpretation and has failed to do so." *Conway* v. *Wilton*, 238 Conn. 653, 662, 680 A.2d 242 (1996); see, e.g., *State* v. *Skakel*, 276 Conn. 633, 666–67, 888 A.2d 985 (overruling prior case law interpreting 1976 amendment to criminal statute of limitations applicable to felonies as applying prospectively only), cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006); *State* v. *Miranda*, 274 Conn. 727, 733–34, 878 A.2d 1118 (2005) (overruling this court's prior interpretation of General Statutes § 53a-59 [a] [3]); *Waterbury* v. *Wash-*

*ington,* 260 Conn. 506, 538–39, 800 A.2d 1102 (2002) (overruling prior cases concerning exhaustion doctrine as applied to Connecticut Environmental Protection Act); *State* v. *Colon,* 257 Conn. 587, 589, 778 A.2d 875 (2001) (overruling this court's prior interpretation of General Statutes § 53a-48 [a]); *Ferrigno* v. *Cromwell Development Associates,* 244 Conn. 189, 201–202, 708 A.2d 1371 (1998) (overruling prior interpretation of General Statutes § 37-9 [3] because that interpretation created irreconcilable conflict between civil and criminal provisions of usury law); *Santopietro* v. *New Haven,* 239 Conn. 207, 215, 682 A.2d 106 (1996) (concluding that our previous interpretation of General Statutes § 52-228b was flawed); *Conway* v. *Wilton,* supra, 662–63 (overruling prior interpretation of General Statutes § 52-557f [3] as applied to municipalities).

In the present case, the argument in favor of legislative acquiescence is particularly weak because "the legislative acquiescence doctrine requires *actual acquiescence* on the part of the legislature. [Thus] [i]n most of our prior cases, we have employed the doctrine not simply because of legislative inaction, but because the legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue." (Emphasis added.) *Berkley* v. *Gavin,* 253 Conn. 761, 776–77 n.11, 756 A.2d 248 (2000). "In other words, [l]egislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute." (Internal quotation marks omitted.) *State* v. *Salamon,* supra, 287 Conn. 525. In the present case, we find it significant that § 52-564 has not been amended since 1963. Accordingly, there has been no actual acquiescence on the part of the legislature in reaction to the Appellate Court's decision in *Schaffer,* which was published in 1986. We therefore conclude

that the doctrine of legislative acquiescence has little persuasive value in the present case.

Finally, we are troubled by the defendant's argument that this court has "permitted" the Appellate Court and the Superior Court to apply the clear and convincing standard of proof to claims brought pursuant to § 52-564 by declining to decide the issue of the applicable standard of proof in *Howard* v. *MacDonald*, supra, 270 Conn. 111. In *Howard*, we determined that it was not necessary to decide what standard of proof applied to statutory theft claims under § 52-564 because we concluded that, even under the heightened burden, the plaintiff in that case provided sufficient evidence of his claim. Id., 130. The defendant's argument suggests that, by *not deciding* the standard of proof issue in *MacDonald*, we implicitly gave our imprimatur to the Appellate Court's decision in *Schaffer*. To be clear, we are more than capable of deciding an issue when we determine that it is necessary or appropriate to do so. Indeed, "sound principles of judicial restraint and judicial economy counsel [an appellate court] to resolve only those issues that are necessary to the proper determination of [an] appeal." (Internal quotation marks omitted.) *State* v. *Flanagan*, 102 Conn. App. 105, 113 n.4, 925 A.2d 385 (2007), rev'd on other grounds, 293 Conn. 406, 978 A.2d 64 (2009). Accordingly, our decision not to decide an issue should not be construed as our endorsement of the status quo. This is particularly true in this instance because our dictum in *Freeman* was, in fact, highly critical of *Schaffer*.

The defendant next claims that there are significant public policy reasons that support the application of the clear and convincing standard of proof. In particular, the defendant claims that § 52-564, which provides for an award of treble damages, is akin to a punitive sanction, and "punitive sanctions historically have fallen under the purview of the state in enforcing its

criminal laws." In addition, the defendant claims that the heightened standard of proof is appropriate in light of the "serious consequences" and "harsh or far-reaching effects" that an adverse finding would have on defendants. (Internal quotation marks omitted.) Our case law has previously rejected both of these arguments.

"This court long ago declared that [§ 52-564] has never been regarded as a penal statute." (Internal quotation marks omitted.) *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 219, 579 A.2d 69 (1990), quoting *Plumb* v. *Griffin*, 74 Conn. 132, 135, 50 A. 1 (1901). "Penal statutes, strictly and properly, are those imposing punishment for an offense against the [s]tate. . . . [A] statute which gives no more than a right of action to the party injured to recover increased damages, is not a penal statute." (Citations omitted.) *Plumb* v. *Griffin*, supra, 134–35. Thus, "[a]bsent evidence of legislative intent to the contrary, we continue to presume that when a statutory private right of action includes multiple damages, the plaintiff's burden of proof is the same as that in other tort cases"; *Freeman* v. *Alamo Management Co.*, supra, 221 Conn. 683; that is, the preponderance of the evidence standard.

This court, likewise, has considered and rejected the defendant's claim that a heightened standard of proof is appropriate in light of the "serious consequences" and "harsh or far-reaching effects" that an adverse finding would have on defendants. (Internal quotation marks omitted.) "Our common law cases have . . . rejected the premise that the risk of stigmatization of the defendant automatically requires a higher standard of proof to be imposed [on] the plaintiff." *Freeman* v. *Alamo Management Co.*, supra, 221 Conn. 681. Since the 1800s, this court has held that, in civil cases, "the mere preponderance of evidence" standard is applicable, "even though the result imputes [to the defendant] the charge

of a felony." *Mead* v. *Husted*, 52 Conn. 53, 56 (1884) (applying preponderance of evidence standard to civil claim for arson). Similarly, in *Mallory* v. *Mallory*, 207 Conn. 48, 539 A.2d 995 (1988), a case in which a custody order was based on a finding that a parent had sexually abused his child; id., 51; we acknowledged the "substantial social stigma" that ensues upon such a finding but concluded nonetheless "that a preponderance of the evidence standard adequately protects a parent from false accusations of sexual abuse, and that the ordinary civil standard of proof better serves the strong societal interest in protecting children from abusive parents." Id., 52. In the present case, the stigma imposed on the defendant is considerably less than that imposed on the parent in *Mallory* and no greater than that imposed on the defendant in *Mead*. Accordingly, we reject the defendant's argument that a heightened standard of proof is appropriate in the present case.

The defendant finally claims that other jurisdictions that have addressed similar issues have applied the clear and convincing standard of proof. In support of this claim, the defendant first cites to an annotation from American Law Reports; annot., Standard of Proof as to Conduct Underlying Punitive Damages Awards— Modern Status, 58 A.L.R.4th 878, 888–89 (1987); and to various cases discussed therein,[12] for the proposition that the clear and convincing standard of proof applies to claims for punitive damages. We are unpersuaded by these authorities.

At the outset, we note that this American Law Reports annotation and the supplement thereto also contain discussion of numerous cases that agree with our conclusion that the preponderance of the evidence stan-

---

[12] See, e.g., *Linthicum* v. *Nationwide Life Ins. Co.*, 150 Ariz. 326, 332, 723 P.2d 675 (1986); *Travelers Indemnity Co.* v. *Armstrong*, 442 N.E.2d 349, 363–65 (Ind. 1982); *Tuttle* v. *Raymond*, 494 A.2d 1353, 1363 (Me. 1985); *Wangen* v. *Ford Motor Co.*, 97 Wis. 2d 260, 300, 294 N.W.2d 437 (1980).

dard of proof generally applies to claims for punitive damages. Id., 888; annot., 58 A.L.R.4th, supra, pp. 84–85 (Sup. 2009); see, e.g., *Jordan* v. *Clayton Brokerage Co.*, 975 F.2d 539, 541 (8th Cir. 1992) (applying Missouri law), cert. denied, 507 U.S. 916, 113 S. Ct. 1272, 122 L. Ed. 2d 667 (1993); *American Funeral Assurance Co.* v. *Hubbs*, 700 So. 2d 283, 286 (Miss. 1997); *United Nuclear Corp.* v. *Allendale Mutual Ins. Co.*, 103 N.M. 480, 484–85, 709 P.2d 649 (1985); *Ford Motor Co.* v. *Durrill*, 714 S.W.2d 329, 347 (Tex. App. 1986). Moreover, we previously reviewed this exact American Law Reports annotation in connection with our decision in *Freeman* and concluded at that time that claims for multiple damages need only be proven by the preponderance of the evidence standard. In *Freeman*, we stated: "A number of jurisdictions require clear and convincing evidence for the award of punitive damages. . . . Most of these jurisdictions, however, have adopted this standard by statute rather than by judicial decision . . . and most of these statutes reflect a legislative response to a well publicized, dramatic increase in the size and frequency of punitive damages awards. . . .

"Whatever the validity of the concerns about boundless punitive damages may be elsewhere, the risk of unfair and excessive punitive damages awards is substantially limited in this state by routine constraints on the amount of punitive damages. The Connecticut courts have . . . consistently limited punitive or exemplary damage awards in Connecticut to costs in excess of taxable costs. . . . There are statutory exceptions to this rule, such as [General Statutes] § 47a-46 . . . . *The legislature has not, however, established any statutory linkage between a right to recover punitive damages and a higher standard of proof.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Freeman* v. *Alamo Management Co.*, supra, 221 Conn. 679–80. Our conclusion and view of the

authorities contained in the American Law Reports annotation have not changed since our decision in *Freeman*.

The defendant next calls our attention to Florida Stat. § 772.11 (2007), which provides a civil remedy for theft. The Florida statute is similar to § 52-564 but differs in one key respect. The Florida statute *explicitly provides* that a plaintiff must prove his claim by clear and convincing evidence,[13] whereas § 52-564 is silent with respect to the applicable standard of proof. In our view, the Florida statute does not support the defendant's claim. We are well aware that there is variation among the jurisdictions with respect to the applicable standard of proof to claims for multiple damages. We conclude, however, with respect to the issue of statutory interpretation, that the Florida statute is further evidence of the fact that when a legislature intends to impose a higher standard of proof in a civil statute, it will include explicit language in the statute to effectuate that intent. In the present case, our legislature did not include such language in § 52-564. Accordingly, we apply the preponderance of the evidence standard.

The defendant's last argument concerns the Texas Theft Liability Act. See Texas Civ. Prac. & Rem. Code Ann. § 134.001 et seq. (Vernon 2005). The Texas Theft Liability Act provides victims of a theft, as defined in various sections of the Texas Penal Code, with a civil action to recover actual damages, attorney's fees, costs and, "in addition to actual damages, damages awarded by the trier of fact in a sum not to exceed $1000 . . . ."

---

[13] Florida Stat. § 772.11 (2007) provides in relevant part: "(1) Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of [§§] 812.012–812.037 or [§] 825.103 (1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts. . . ."

Tex. Civ. Prac. & Rem. Code Ann. § 134.005 (a) (1) (Vernon 2005). The statute is silent with regard to the applicable burden of proof. Nevertheless, it has been interpreted to require mere proof by a preponderance of the evidence. See *In re Powers*, 261 Fed. Appx. 719, 721 (5th Cir. 2008) ("[u]nder Texas law . . . silence mitigates in favor of applying the same burden of proof as [in] any other civil action—the preponderance of the evidence standard" [internal quotation marks omitted]); see also *El Paso Refining, Inc.* v. *Scurlock Permian Corp.*, 77 S.W.3d 374, 381 (Tex. App. 2002, pet. denied) ("the clear and convincing standard is mandated only in circumstances [in which] clear statutory language permits its application"). The defendant claims that the Texas Theft Liability Act differs significantly from § 52-564 because it contains a $1000 cap on damages that are permitted over and above the plaintiff's actual damages, whereas § 52-564 contains no such cap. The defendant argues that § 52-564, therefore, is analogous to a civil fine, which makes the imposition of a higher standard of proof appropriate. We disagree.

We already have rejected the defendant's claim that § 52-564 is penal in nature. In addition, our analysis is not altered by virtue of the fact that § 52-564 does not contain a cap on treble damages. We previously have held that the preponderance of the evidence standard of proof applies to other statutes that provide for multiple damages, even though they do not contain a cap. See *Freeman* v. *Alamo Management Co.*, supra, 221 Conn. 678 (preponderance standard is applicable to claims for statutory punitive damages pursuant to § 47a-46); *Nielsen* v. *Wisniewski*, supra, 32 Conn. App. 137–38 (preponderance standard is applicable to claims for punitive damages under § 42-110g).[14]

---

[14] Similarly, we disagree with the conclusion that the Appellate Court reached in the present case on the basis of the distinction that it drew between § 52-564 and § 47a-46. See *Stuart* v. *Stuart*, supra, 112 Conn. App. 175–76. The Appellate Court concluded that our holding in *Freeman* was not applicable because the multiple damages provision of § 52-564 contains

The judgment of the Appellate Court is reversed with respect to the issue of the burden of proof applicable to statutory theft claims under § 52-564 and the case is remanded to that court with direction to reverse in part the judgment of the trial court and to remand the case for further proceedings according to law.

In this opinion the other justices concurred.

mandatory language that requires the court to award treble damages, whereas the comparable provision in § 47a-46 contains discretionary language. See id. (contrasting phrase "shall pay the owner treble his damages" in § 52-564 with the phrase "may recover . . . double damages" in § 47a-46 [internal quotation marks omitted]). Although this single factor weighs in favor of a heightened standard of proof, we conclude that the countervailing factors that we previously discussed in interpreting § 52-564 weigh more heavily in support of the application of the preponderance of the evidence standard.