IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 9, 2008

Charles R. Fulbruge III
Clerk

No. 07-50700
Summary Calendar

In the Matter Of: ROBERT E. POWERS, JR.,

Debtor.

_____

ROBERT E. POWERS, JR.,

Appellant,

v.

CAREMARK INC.,

Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:07-CV-127

_____

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

The Appellant, Robert E. Powers, Jr. ("Powers"), filed for Chapter 7 personal bankruptcy on October 14, 2005. Appellee Caremark Inc. ("Caremark"), one of Powers's creditors, filed an adversary complaint against Powers, objecting to the dischargeability of his debt under 11 U.S.C. § 523 and for damages and attorneys' fees under the Texas Theft Liability Act ("TTLA"), TEX. CIV. PRAC. & REM. CODE ANN. § 134.001 - .005 (Vernon 2007). After a trial on the merits, the bankruptcy court entered judgment in favor of Caremark. The court found that Powers had committed an act of civil theft violating the Texas Theft Liability Act and that such act qualified as embezzlement or conversion under § 523. Further, the bankruptcy court denied dischargeability of the debt and awarded damages and attorneys' fees against Powers. The district court affirmed the bankruptcy court, and Powers filed the present appeal. Finding no reversible error, we affirm.

Briefly, the facts underlying the adversary complaint are as follows. Powers owned a construction business, Powers Construction, Inc. ("PCI"), that performed a construction job for Caremark prior to April 2001. A dispute arose out of this contract, and the matter was in litigation until April 2001. On April 18, 2001, Caremark mistakenly issued a check in the amount of $633,369.00, payable to "Powers Construction, Inc." Caremark did not owe PCI this money and there was no existing contractual relationship between Caremark and PCI other than the one in litigation. The check was received by PCI and was deposited into a corporate bank account on April 23, 2001. PCI's bookkeeper, Tammy Perez, showed the check to Powers before it was deposited, but he did not instruct her to return the check or to hold it, and no one inquired of Caremark as to why the check had been sent. Soon after the check was deposited, the funds were transferred to a money market account maintained by PCI. Prior to the transfer, the balance of the money market account was less than $7,000. Over the next few months, Powers proceeded to withdraw funds

from the money market account to pay both personal and corporate bills. By September 4, 2001, almost all the funds received by Caremark had been spent. Caremark did not act on the matter until January 24, 2002, when it made demand upon PCI to return the funds which had been sent by mistake. Caremark also filed suit in state court in an effort to recover the money. Caremark was partially successful and on March 11, 2002, PCI returned $210,000 to Caremark. The litigation continued, but Caremark did not recover any additional funds prior to Powers' filing of bankruptcy in October 2005.

We review the decision of the bankruptcy court "under the same standards applied by the district court hearing the appeal from bankruptcy court; conclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo." In re Nat'l Gympsum Co., 208 F.3d 498, 504 (5th Cir. 2000).

On appeal, Powers first argues that the bankruptcy court utilized the wrong burden of proof in finding him liable under the TTLA. He argues that the bankruptcy court should have applied the "clear and convincing evidence" standard, rather than the less onerous standard of "preponderance of the evidence." This argument is without legal support. The TTLA provides victims of a theft, as defined in various sections of the Texas Penal Code, with a civil action to recover damages, fees, and costs from the thief. The statute itself is silent with regard to the burden of proof that should be applied. Under Texas law, that silence "mitigates in favor of applying the same burden of proof as any other civil action" — the preponderance of the evidence standard. El Paso Ref. v. Scurlock Permian Corp., 77 S.W.3d 374, 381 (Tex. App. 2002); see also Ellis County State Bank v. Keever, 888 S.W. 2d 790, 792 (Tex. 1994) (holding that the general rule in civil cases is that the burden of proof is by a preponderance of the evidence). Powers attempts to draw an analogy to cases in which exemplary damages are sought. However, in those circumstances, clear statutory language

permits the application of the clear and convincing standard. See El Paso Ref., 77 S.W. at 381 ("[T]he clear and convincing standard is mandated only in circumstances where clear statutory language permits its application."). Here, as just discussed, there is no such statutory authorization. Further, the nature of cases brought under the TTLA do not present any unique reasons justifying departure from this standard. Cases under the TTLA raise no issues of constitutional magnitude, nor do they implicate loss of life or liberty as in a criminal theft case. See id. at 382. The bankruptcy judge was correct in applying the preponderance of the evidence standard.

Second, Powers argues that the evidence presented by Caremark was not sufficient to support a finding of liability under the TTLA. The factual findings of the bankruptcy judge, affirmed by the district court, are to be credited by this Court unless clearly erroneous. In re Martin, 963 F.2d 809, 813-814 (5th Cir. 1992). Under this standard, if the bankruptcy court's "account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as a trier of fact, it would have weighed the evidence differently." Id. at 814 (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985)).

The TTLA imposes liability on anyone who commits theft, as defined by the Texas Penal Code. TEX. CIV. PRAC. & REM. CODE ANN. § 134.002, .003 (Vernon 2007). Under Texas law, a person commits the offense of theft if he unlawfully exercises control over property with the intent to deprive the owner of its use. TEX. PENAL CODE ANN. § 31.01, .03 (Vernon 2007). The intent to deprive contemplated under § 31.03 must exist at the time of taking or exchange. See Reed v. State, 717 S.W. 2d 643, 645 (Tex. App. 1986).

Powers argues that the bankruptcy court's finding of liability was erroneous because it was based on impermissible inferences and speculation. We disagree. Caremark presented both direct and circumstantial evidence to

the bankruptcy court. It introduced the deposition of Tammy Perez, the bookkeeper of PCI. Perez testified that she showed the Caremark check to Powers and discussed it with him before depositing it in the bank account; that Powers did not direct Perez to hold the check or to contact Caremark about the check; and that no jobs were pending that would justify the receipt of a payment from Caremark. From this evidence, the bankruptcy court inferred that Powers was aware that, absent intervention, the Caremark check would be deposited into the corporate checking account and then transferred from the corporate checking account to the money market account. In the months following the deposit of the Caremark check, Perez prepared monthly financial reports and reviewed them with Powers. From this evidence, the bankruptcy court inferred that Powers knew of the $7,000 balance in the money market account prior to the deposit of the Caremark check and that he later saw the balance of his money market account increase to over $600,000 the next month. After the money was transferred to the money market account, many bills, both corporate and personal, were paid out of the money market account, which, but for the Caremark deposit, would have lacked sufficient funds for those payments. The evidence showed that Powers was the only individual with the authority to draw checks on that account and that he signed every check for every payment made from the account. Powers did not testify at trial, but he was deposed by Caremark in connection with the adversary proceeding. During the deposition, when questioned about the Caremark check, he declined to answer questions and invoked his Fifth Amendment rights against self-incrimination. The bankruptcy judge drew an adverse inference from Powers' failure to testify. The bankruptcy judge concluded that, by spending the money in the money market account, which Powers knew did not belong to him or PCI, Powers was unlawfully appropriating property within the meaning of the Texas Penal Code.

We cannot agree with Powers that the bankruptcy court's judgment was

based in conjecture or speculation. Texas courts have held that the element of intent, for the crime of theft, can be inferred from the surrounding circumstances. See McGee v. State, 774 S.W. 2d 229, 234 (Tex. Cr. App. 1989). Given Powers' knowledge of the check, his failure to hold the check or contact Caremark, his knowledge that no money was due from Caremark, and his expenditure of the funds, the bankruptcy court's conclusion that Powers intended to deprive Caremark of the funds, and thus committed theft, does not constitute clear error. Therefore, the assessment of liability under the TTLA was correct.

Powers also argues that the bankruptcy court erred in drawing a negative inference from his failure to testify on the grounds of self-incrimination. This argument is without merit. The bankruptcy court was entitled to draw an adverse inference from Powers' assertion of his Fifth Amendment rights and refusal to testify at trial. See Farace v. Indep. Fire Ins. Co., 699 F.2d 204, 210 (5th Cir. 1983) (stating the prevailing rule that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." (citing Baxter v. Palmigiana, 425 U.S. 308, 318 (1976))).

Third, Powers disputes the decision of the bankruptcy court granting Caremark's objection to the dischargeability of the debt. The bankruptcy court found that the debt in favor of Caremark fell within two different categories of nondischargeability: embezzlement (§ 523(a)(4)) and willful and malicious injury (§ 523(a)(6)).

Under § 523(a)(4), a debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" may not be discharged in bankruptcy. This discharge exception "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both

classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." In re Boyle, 819 F.2d 583, 588 (5th Cir. 1987). The issue of nondischargeability is a matter of federal law. Grogan v. Garner, 498 U.S. 279, 284 (1991). The standard of proof for the dischargeability exceptions found in 11 U.S.C. § 523(a) is the usual and customary preponderance of the evidence standard. Id. at 286.

Under federal common law, embezzlement is defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." Miller v. J.D. Abrams Inc., 156 F.3d 598, 602 (5th Cir. 1998). Powers first argues that there could be no embezzlement because he was not entrusted with Caremark's property. Embezzlement, however, is not limited to situations in which one person is entrusted with the property of another. It also applies where, as here, a person lawfully obtains property, but then fraudulently appropriates it for his or her own use. Id. Second, Powers again argues that Caremark presented no direct evidence of embezzlement and that the bankruptcy court's decision rested solely on improper inferences. This argument too is unpersuasive. As discussed above, the bankruptcy judge's determination that Powers intended to misappropriate the Caremark funds was not based in conjecture, but rather on the undisputed evidence presented to him. Given the evidence presented, the bankruptcy judge was justified in finding that Powers' utilization of the funds received from Caremark constituted embezzlement. Accordingly, the debt was nondischargeable pursuant to § 523(a)(4).

Having found that the debt was not dischargeable pursuant to § 523(a)(4), the Court does not need to address the alternative basis for dischargeability, § 523(a)(6).

For the foregoing reasons, the judgement is AFFIRMED.