**Affirmed in Part and Reversed and Rendered in Part and Memorandum Opinion filed January 13, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-01049-CV

---

**STATEWIDE HYDRAULICS, INC. AND PHILLIP BERROSPE, Appellants**

**V.**

**EZ MANAGEMENT GP, LLC D/B/A EZ CHECK CASHING & BLUE PRINTING, Appellee**

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 1001029**

---

### M E M O R A N D U M   O P I N I O N

Statewide Hydraulics, Inc. and Phillip Berrospe appeal from the trial court's judgment in favor of EZ Management GP, LLC d/b/a EZ Check Cashing & Blue Printing. We affirm in part and reverse and render in part.

### BACKGROUND

EZ Management operated a check cashing store. It cashed approximately 60

"bad checks" for Statewide and its owner Berrospe from 2006 to 2011. As described by the parties, and for purposes of this appeal, "bad checks" were checks that were dishonored by Statewide's and Berrospe's bank when presented for payment by EZ Management. The parties understood that, whenever EZ Management cashed a "bad check," Statewide and Berrospe were required to repay the cash they had received from EZ Management.[1]

EZ Management hired Nicki Viars in May 2010 to audit the company. She discovered that EZ Management had cashed two bad checks for Statewide, and that Statewide had not repaid the money that it had received for the checks. One check was for $8,695.03; the other was for $25,000. EZ Management demanded repayment. Statewide repaid $4,000 on January 15, 2011, and $10,000 on January 17, 2011. According to EZ Management's records, Statewide still owed a balance of $19,695.03 on the $25,000 check after these two payments.

EZ Management sued Statewide and Berrospe for their failure to fully repay the $25,000 check. It asserted causes of action for breach of contract, money had and received, violations of the Texas Theft Liability Act[2], and suit on a sworn account.

---

[1] The parties do not analyze their transactions under Uniform Commercial Code Article 3, which "establishes a comprehensive scheme governing the procedures, liabilities, and remedies pertaining to negotiable instruments, including checks." *See 1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 380 (Tex. 2011); *See also* Tex. Bus. & Com. Code Ann. §§ 3.101-.605 (Vernon Supp. 2014). Instead, the parties analyze their transactions under general contract law. When a bank dishonors a check, the drawer of the check is obligated to pay the amount of the check to the check's holder according to its terms at the time the check was issued. Tex. Bus. & Com. Code Ann. § 34.14(b) (Vernon 2009); *see 1/2 Price Checks Cashed*, 344 S.W.3d at 380. A lawsuit by a check's holder for payment on a dishonored check is a suit on a contract. *See 1/2 Price Checks Cashed*, 344 S.W.3d at 381. The parties' imprecise terminology (*e.g.*, "bad check") does not affect our resolution of Statewide's and Berrospe's issues on appeal; therefore, we adopt the parties' terminology and state only those facts needed to resolve the appeal.

[2] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-.005 (Vernon 2011 & Supp. 2014).

The trial court signed a judgment in favor of EZ Management after a bench trial. It also signed findings of fact and conclusions of law. The trial court found Statewide and Berrospe liable for each cause of action asserted. It awarded EZ Management $19,695.03 in actual damages, $46,700 in attorney's fees for trial, $25,000 in attorney's fees if the case is appealed to the court of appeals, and $25,000 in attorney's fees if the case is appealed to the Texas Supreme Court. Statewide and Berrospe timely appealed.

ANALYSIS

Statewide and Berrospe argue five issues on appeal. In issues one through three, Statewide and Berrospe challenge the legal and factual sufficiency of the evidence supporting the trial court's findings that (1) they owed money on the $25,000 check; (2) Berrospe is liable for Statewide's debts; and (3) the award of appellate attorney's fees to EZ Management is reasonable and necessary. In issue four, they argue that the trial court erred in awarding EZ Management appellate attorney's fees regardless of whether EZ Management prevails on appeal. In issue five, Statewide and Berrospe argue that the trial court erred in denying their request for attorney's fees. We address Statewide's and Berrospe's issues in turn.

## I. Legal and Factual Sufficiency

### A. Standard of Review and Applicable Law

We review a trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards that we apply in reviewing jury verdicts. *Hightower, Russo & Capellan v. Ireson, Weizel & Hightower, P.C.*, 420 S.W.3d 315, 321 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In reviewing a legal sufficiency challenge, we consider evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it.

3

*City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could do so, and disregard contrary evidence unless a reasonable fact finder could not do so. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the finding under review. *Id.* Evidence is legally insufficient when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. The fact finder is the sole judge of the credibility of witnesses and the weight to give their testimony. *Id.* at 819.

When reviewing the factual sufficiency of the evidence, we must consider and weigh all the evidence. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We can set aside a finding only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Id.* We may not substitute our own judgment for that of the trier of fact. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Jones v. Smith*, 291 S.W.3d 549, 555 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

B. **The Evidence is Legally and Factually Sufficient to Support the Trial Court's Finding that Statewide Owed $19,695.03 to EZ Management**

In their first issue, Statewide and Berrospe argue that the evidence is legally and factually insufficient to support the trial court's finding that Statewide owed

4

$19,695.03 on the $25,000 check.[3] Statewide and Berrospe assert that the evidence conclusively establishes that Statewide repaid the money given to it by EZ Management in exchange for the check. Alternatively, Statewide and Berrospe argue that the trial court's finding is contrary to the great weight and preponderance of the evidence.

Statewide and Berrospe assert that they repaid the $25,000 check through payments of $4,000 on January 15, 2011; $10,000 on January 17, 2011; and $11,000 on January 31, 2011. EZ Management credited Statewide for the January 15 and January 17 payments; it asserts that Statewide did not make a payment on January 31, 2011, and that it still owed a balance of $19,695.03 after all payments were applied.

EZ Management's accountant, Viars, testified that Statewide owed EZ Management for checks cashed in the amount of $8,695.03 and $25,000. She stated that Statewide paid EZ Management $4,000 on January 15, 2011, and $10,000 on January 17, 2011. She stated that EZ Management applied the payments first to the $8,695.03 check and then to the $25,000 check. Viars determined that Statewide still owed $19,695.03 on the $25,000 check after EZ Management credited all of Statewide's payments.

Viars testified that EZ Management had no records indicating a payment on January 31, 2011. She stated that former EZ Management employee John Saccone filled out EZ Management's daily money sheets in January 2011. The daily money

---

[3] Statewide's and Berrospe's argument does not track the trial court's findings of fact. The trial court did not expressly state that Statewide and Berrospe owed $19,695.03 for any specific check; instead, the trial court found: "After all payments made by Defendants Statewide and/or Berrospe were applied to the open account and the checks subject to their agreement with EZ Management, the amount remaining due to EZ Management was $19,695.03." The trial court also found: "Defendants Statewide and/or Berrospe hold money in the amount of $19,695.03, which in equity and good conscience belongs to EZ Management." We construe Statewide's and Berrospe's sufficiency challenge as addressing these findings.

5

sheets tracked money accepted and paid by EZ Management. Saccone also maintained an electronic spreadsheet that tracked payments EZ Management's clients made on bad checks. Viars stated that Saccone kept incomplete records. He did not completely fill out all daily money sheets, and his spreadsheet did not list all bad checks. She testified that EZ Management fired Saccone after it determined that EZ Management was missing money and discovered that Saccone was running a bookmaking operation out of the store.

The trial court admitted Saccone's spreadsheet into evidence along with the daily money sheets for January 15, 17 and 31, 2011. Saccone's spreadsheet listed Statewide payments on January 15 and January 17; it did not list a Statewide payment on January 31. The January 15 and January 17 daily money sheets were filled out completely. The sheets listed Statewide payments of $4,000 and $10,000 on January 15 and 17, respectively. The January 31 daily money sheet was incomplete. It did not show a Statewide payment on that date; however, the sheet recorded a payment made by another EZ Management client that day for $281.

Viars testified that an owner of EZ Management, Eric Behrndt, emailed Berrospe in February and March 2011 demanding full repayment of all money owed by Statewide. The trial court admitted into evidence redacted copies of Behrndt's emails and Berrospe's responses. Berrospe wrote in a response sent February 21, 2011: "I will take you some money tomorrow." Berrospe did not contest his debt in any response.

Berrospe testified that Statewide fully paid the $25,000 bad check. He stated that Statewide paid its debts through a $4,000 payment made January 15, 2011; a $10,000 payment made January 17, 2011; and an $11,000 payment made January 31, 2011. He stated that he currently possessed the $25,000 check. Berrospe testified that Statewide had been unable to produce bank records proving

6

the January 31, 2011 payment.  He also stated that he also owed a mortgage debt to Behrndt.

Saccone likewise testified that Statewide fully paid the $25,000 check.  He stated that Statewide paid the check through a $4,000 payment, credited January 15, 2011; a $10,000 payment, credited January 17, 2011; and an $11,000 payment, credited January 31, 2011.  Saccone testified that, in addition to maintaining an electronic spreadsheet, he accounted for payments on bad checks by copying the bad check and writing on the copy the date and amount of each payment made.  He testified that, whenever a client made a payment, he would give a copy of the bad check with his notations to the client.  The client's copy served as a receipt.  Saccone testified that he would return a bad check to a client whenever the client fully paid the bad check.

The trial court admitted into evidence a copy of the $25,000 check with Saccone's notations.[4]  The copy shows the notations, "Paid $4,000 1-15-11;" "Paid [$]10,000 1-17-11;" and "Paid [$]11,030 1-31-11."  Saccone testified that he handwrote the notations onto the check.  He testified that, according to his accounting system, the notations indicated that Statewide paid $4,000 on January 15, 2011; $10,000 on January 17, 2011; and the remaining $11,000 owed, and a $30 service charge, on January 31, 2011.

Saccone testified that he left his position at EZ Management and assigned his ownership interest to Behrndt on February 8, 2011, because Behrndt threatened him.  Saccone testified that he currently works for Statewide.

Based on this record, Statewide and Berrospe argue that Statewide fully paid

---

[4] Statewide and Berrospe offered the copy of the check, and the trial court admitted it into evidence "in full" for "the partial purpose of just showing what happened with [Statewide] — with [the $25,000 check]."

the $25,000 bad check. They assert that there is no dispute that Statewide paid $4,000 on January 15, 2011, and $10,000 on January 17, 2011; they further contend that Saccone's testimony "conclusively establishe[s]" payment of the remaining $11,000 on January 31, 2011.

We reject Statewide's and Berrospe's argument because Saccone's testimony does not conclusively establish that Statewide paid $11,000 on January 31, 2011. A fact dispute exists because some testimony indicates that Statewide paid $11,000 on January 31, 2011; other testimony indicates that Statewide did not do so.

Statewide and Berrospe cite *City of Keller*, 168 S.W.3d at 820, for the proposition that "even the testimony of an interested witness is conclusive if it is 'clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily converted.'" On this record, the trial court reasonably could have concluded that Saccone's testimony does not meet this description and therefore is not conclusive.

Viars testified that Saccone was fired from EZ Management on February 8, 2011, because money was missing from EZ Management and because Saccone was running a bookmaking operation out of the store. Saccone testified that, on February 8, 2011, he assigned his ownership interest in EZ Management to Behrndt because Behrndt threatened him. Saccone testified that he currently works for Statewide. The trial court acted reasonably and within its authority as fact finder in deciding not to credit Saccone's testimony regarding a disputed issue of fact. *See id.*; *see also Frank B. Hall & Co. v. Buck*, 678 S.W.2d 612, 628 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("The jury should be given the opportunity to judge for themselves the witness's credibility in light of the relationship between the parties, the witness's motive for testifying, or any matter

8

which would tend to influence the testimony given by a witness.").

Saccone's testimony that Statewide fully paid the $25,000 check is explicitly contradicted by Viars, who testified that EZ Management hired her to account for debts owed on bad checks. Based on her review of EZ Management's records, she determined that Statewide owed $19,695.03 on the $25,000 bad check. Her testimony contradicts Saccone's testimony that Statewide fully paid the $25,000 check; therefore, the trial court, as fact finder, could reasonably believe her testimony over Saccone's. *See City of Keller*, 168 S.W.3d at 820.

Even assuming for argument's sake that Saccone's testimony was uncontroverted, *City of Keller* does not mandate that the trial court believe Saccone's testimony. *See id.* at 819-20. Saccone's notation "Paid [$]11,030 1-31-11" on a copy of the $25,000 check does not conclusively establish that Statewide, in fact, paid. *See id.* at 821. The trial court reasonably could have determined that Saccone wrote his notation even though Statewide had not paid on January 31, 2011. The spreadsheet and daily money sheet for January 31, 2011, do not record a Statewide payment.

Viewing the evidence in the light most favorable to the trial court's determination, we conclude that reasonable and fair-minded people could reach the conclusion that Statewide owed $19,695.03 to EZ Management, and we cannot conclude that the finding is so against the great weight and preponderance of the evidence so that it is manifestly unjust. Therefore, the evidence is legally and factually sufficient to support the trial court's finding that Statewide owed $19,695.03 to EZ Management. *See id.* at 822; *Golden Eagle Archery*, 116 S.W.3d at 761. We overrule Statewide's and Berrospe's first issue.

**C.** **Unchallenged Findings of Fact Support the Trial Court's Judgment that Berrospe is Liable to EZ Management**

In their second issue, Statewide and Berrospe argue: "The evidence is legally and factually insufficient to support the finding [Statewide's] owner Berrospe was liable for the company's debts." Statewide and Berrospe assert that "the only way to pierce the corporate veil and hold Berrospe liable for [Statewide's] debts is if EZ Management proved that Berrospe used [Statewide] as a sham to perpetrate a fraud against EZ Management for his own personal benefit." Statewide and Berrospe further assert that "[t]here is no evidence in the record showing that Berrospe used [Statewide] as a sham to perpetrate a fraud . . . for his direct, personal benefit." EZ Management argues that Statewide's and Berrospe's challenge is immaterial to resolution of the case because Statewide and Berrospe "do not challenge the legal or factual sufficiency of the evidence supporting the trial court's finding that Berrospe was individually and directly liable for nonpayment of the bad check."

The trial court rendered judgment against Berrospe individually. It ordered that "[EZ Management] recover all actual damages from and against [Statewide and Berrospe] in the amount of $19,695.03." The trial court issued findings of fact and conclusions of law. It did not find that "[Statewide's] owner Berrospe was liable for the company's debts;" it also did not find that "Berrospe was individually and directly liable for nonpayment of the bad check." Instead, the trial court issued these findings of fact, among others:

1.2 Defendant [Statewide], through its President [Berrospe], obtained check-cashing services from EZ Management.

1.3 Defendants Statewide and/or Berrospe maintained an open account with EZ Management, on which Statewide and/or Berrospe cashed checks regularly, in the course and scope of their regular

10

business operations.

1.4     Defendants Statewide and/or Berrospe tendered one or more checks to EZ Management, drawn on Defendant Statewide's account at Comerica Bank in Houston, Texas, Account Number [XXXXXXXXXXX].

1.5     Defendants Statewide and/or Berrospe entered into a contract with EZ Management, whereby EZ Management paid Defendants the amount of each check presented by Defendants, in cash, at the time the check was presented.

1.6     Defendants Statewide and/or Berrospe were required by the terms of their contract with EZ Management to re-pay each check presented, along with a service charge, to EZ Management.

1.7     A systematic record was kept by EZ Management of the transactions or series of transactions between EZ Management and Defendants Statewide and Berrospe.

1.8     When Defendants Statewide and Berrospe accepted the cash from EZ Management in exchange for their checks, they became bound to pay EZ Management the full amounts on the checks.

1.11    Defendants Statewide and/or Berrospe failed to re-pay the cash they received from EZ Management in exchange for presentment of the checks, plus applicable service charges, and failed to ensure there were sufficient funds in Defendant Statewide's account to pay the check.

1.13    After all payments made by Defendants Statewide and/or Berrospe were applied to the open account and the checks subject to their agreement with EZ Management, the amount remaining due to EZ Management was $19,695.03.

1.14    Defendants Statewide and/or Berrospe hold money in the account of $19,695.03, which in equity and good conscience belongs to EZ Management.

1.16    The corporate form of Statewide was abused by Defendants Statewide and Berrospe, in that the form was used as a sham to

perpetuate a fraud, the corporation was organized and operated as a mere tool or business conduit of Berrospe, the form was used to evade an existing legal obligation, the form was used to achieve or perpetuate a monopoly, the form was used to circumvent a statute, the form was used to justify a wrong, and/or the corporation was inadequately capitalized so as to work an injustice.

1.17   Defendant Berrospe was the owner and President of Defendant Statewide.

1.18   Defendant Berrospe's acts and omissions were committed within the scope of general authority granted to him in furtherance of Defendant Statewide's business, and for the accomplishment of the objective for which Defendant Berrospe was hired.

1.19   Defendants Statewide and Berrospe appropriated property and/or obtained services from EZ Management by issuing or passing a check when Defendants Statewide and Berrospe did not have sufficient funds in or on deposit with their bank for the payment in full of the checks, including all other checks outstanding.

The trial court issued the following conclusions of law, among others:

2.2   Defendants Statewide and Berrospe are liable to EZ Management for breach of contract.

2.4   Defendants Statewide and Berrospe are liable to EZ Management for money had and received.

2.5   Defendants Statewide and Berrospe defaulted on their open account with EZ Management, and are liable to EZ Management for EZ Management's suit on the account.

2.6   Defendants Statewide and Berrospe unlawfully appropriated property or unlawfully obtained services from EZ Management, in violation of the Texas Theft Liability Act.

2.7   Defendants Statewide and Berrospe are liable to EZ Management for their violations of the Texas Theft Liability Act.

2.8   Defendants Statewide and Berrospe are jointly and severally liable to EZ Management under the theories pled by EZ Management

for piercing the corporate veil, alter ego, and/or respondeat superior.

> 2.9 Defendants Statewide and Berrospe are jointly and severally liable to EZ Management for EZ Management's actual damages in the amount of $19,695.03.

We first must determine which findings Statewide's and Berrospe's issue addresses. A legal or factual sufficiency challenge must address the court's findings. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). Nevertheless, if a party fails to specify the findings challenged, we presume the issue challenges the critical findings. *See* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver."); *$43,774.00 U.S. Currency v. State*, 266 S.W.3d 178, 184 (Tex. App.—Texarkana 2008, pet. denied) ("Even if it is necessary to attack the findings of fact, it is not necessary to specify the name and number of the findings being attacked—so long as it is clear from the brief that particular findings are being attacked.").

We construe Statewide's and Berrospe's issue to challenge all of the trial court's findings holding Berrospe accountable for Statewide's actions. These are findings 1.3, 1.4, 1.5, 1.6, 1.11, 1.13, 1.14, and 1.16. Finding 1.16 addresses Statewide's and Berrospe's abuse of the corporate form; it is implicated by the issue. Findings 1.3, 1.4, 1.5, 1.6, 1.11, 1.13, and 1.14 use the phrase "and/or" between "Statewide" and "Berrospe." These findings can be read as findings against only Statewide, or findings against only Berrospe, if the reader applies the conjunction "or." Alternatively, these findings can be read as findings against both Statewide and Berrospe individually if the reader applies the conjunction "and." Finally, the findings can be read as attributing Statewide's actions to Berropse if,

13

and only if, Statewide's corporate form is pierced. This reading reconciles the trial court's use of the phrase "and/or" in findings 1.3, 1.4, 1.5, 1.6, 1.11, 1.13, and 1.14 with a simple "and" in findings 1.8, 1.16, and 1.19. Findings of fact should be interpreted in their entirety, with effect being given to each finding. *See Cooke Cnty. Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.) (construing findings of fact and conclusions of law in their entirety and determining that the trial court did not base its judgment on an immaterial finding); *Stroud v. Pechacek*, 120 S.W.2d 626, 628 (Tex. Civ. App.—Austin 1938, no writ) ("The same general canons of construction apply to trial court's findings as to those of a jury. These cannons require that such findings be interpreted in the light of the evidence; that they must be considered as a whole and reconciled, where possible; and that, when (so considered) no irreconcilable conflict appears, effect must be given to every finding."). We determine that findings of fact 1.3, 1.4, 1.5, 1.6, 1.11, 1.13, and 1.14 attribute Statewide's actions to Berrospe if, and only if, Statewide's corporate form is pierced.

We also determine that Statewide's and Berrospe's issue does not challenge finding of fact 1.19. This finding does not use the phrase "and/or" between "Statewide" and "Berrospe." We interpret finding 1.19 as applying to Berrospe, regardless of whether Statewide's corporate veil is pierced. *Cf. Jackson v. U.S. Fid. & Guar. Co.*, 689 S.W.2d 408, 412 (Tex. 1985) ("[I]f the jury findings are ambiguous or unclear, the appellate courts must try to interpret the findings so as to uphold the judgment.").

Finding of fact 1.19 relates to EZ Management's claim against Berrospe for violations of the Texas Theft Liability Act. The Theft Liability Act permits a person who has sustained damages resulting from theft, as defined by the Texas Penal Code, to recover from the person who commits theft. *See* Tex. Civ. Prac. &

14

Rem. Code Ann. § 134.002(2) (Vernon Supp. 2014), § 134.005 (Vernon 2011). A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code. Ann. § 31.03(a) (Vernon Supp. 2014).[5] A defendant who acts through a corporation may be liable under the Theft Liability Act regardless of whether the corporate form has been pierced. *See, e.g.*, *In re Powers*, 261 F. App'x 719, 720-22 (5th Cir. 2008) (individual liable under the Texas Theft Liability Act for depositing a mistakenly issued check into his business's bank account and withdrawing proceeds for his personal use, rather than returning the check to the issuer); *King v. State*, 17 S.W.3d 7, 12-15 (Tex. App.— Houston [14th Dist.] 2000, pet. ref'd) (defendant convicted of theft for using money paid to his business for personal use); *Arispe v. State*, No. 03-11-00286-CR, 2013 WL 3929127, at *1, *5 (Tex. App.—Austin July 24, 2013, no pet.) (mem. op., not designated for publication) (defendant convicted of theft for using proceeds from a check given to his business for his personal use).

An erroneous finding of fact or conclusion of law does not require that judgment be reversed if alternative findings of fact and conclusions of law provide a valid basis for judgment. *See Hightower, Russo & Capellan*, 420 S.W.3d at 320-21; *Nguyen v. Nguyen*, 355 S.W.3d 82, 92-93 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Statewide and Berrospe do not challenge finding of fact 1.19. They also do not argue that the evidence is insufficient to support Berrospe's liability for violation of the Texas Theft Liability Act.

Assuming without deciding that the trial court erred in finding Berrospe liable for Statewide's actions, we conclude that the asserted error was harmless. Judgment that Berrospe is liable to EZ Management is otherwise correct based on

---

[5] A person also can commit theft by unlawfully obtaining services by deception. Tex. Penal Code. Ann. § 31.04 (Vernon Supp. 2014).

the trial court's unchallenged determination that Berrospe individually violated the Texas Theft Liability Act. *See Hightower, Russo & Capellan*, 420 S.W.3d at 320-21; *Nguyen*, 355 S.W.3d at 92-93. We overrule Statewide's and Berrospe's second issue.

### D. The Evidence is Legally Insufficient to Support the Trial Court's Award of Appellate Attorney's Fees

In their third issue, Statewide and Berrospe contend that the evidence is legally and factually insufficient to support the trial court's award of attorney's fees to EZ Management of $25,000 if the case is appealed to the court of appeals and $25,000 if the case is appealed to the Texas Supreme Court.

EZ Management requested attorney's fees pursuant to Texas Civil Practice and Remedies Code chapter 38, which provides: "A person may recover reasonable attorney's fees from an individual or corporation . . . if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008). A suit on a check is a suit on a written contract. *See 1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 386, 388 (Tex. 2011). The trial court issued findings of fact that "[i]f this case is appealed to the Court of Appeals, EZ Management will incur additional reasonable and necessary attorney's fees in the amount of $25,000," and "[i]f this case is appealed to the Texas Supreme Court, EZ Management will incur additional reasonable and necessary attorney's fees in the amount of $25,000." The trial court ordered recovery consistent with these findings.

An award of attorney's fees under section 38.001 must be supported by evidence that the fees were both reasonable and necessary. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991), *modified on other grounds by Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006); *Crounse v. State*

*Farm Mut. Auto. Ins. Co.*, 336 S.W.3d 717, 720 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The reasonableness of an award of attorney's fees is generally a question of fact. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "If attorney's fees are proper under section 38.001(8), the trial court has no discretion to deny them." *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009). However, even when attorney's fees are otherwise mandated, denial is appropriate "if the evidence: (1) failed to prove (a) that any attorney's services were provided; or (b) the value of the services provided; or (2) affirmatively showed that no attorney's services were needed or that any services provided were of no value." *Cale's Clean Scene Carwash, Inc. v. Hubbard*, 76 S.W.3d 784, 787 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see also Midland W. Bldg. L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex. 2009). "General statements of reasonableness are insufficient to support an award of attorney's fees." *Dilston House Condo. Ass'n v. White*, 230 S.W.3d 714, 718 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Statewide and Berrospe argue that the trial court's award of appellate attorney's fees is unsupported by any evidence in the record. They assert that EZ Management did not request appellate attorney's fees and did not present evidence regarding its reasonable attorney's fees for proceedings in the court of appeals or the Texas Supreme Court. EZ Management does not contest these assertions. Instead, it argues that the trial court's decision is supported by the testimony of Statewide's and Berrospe's counsel, who requested $25,000 in attorney's fees if the case is appealed to the court of appeals and $25,000 if the case is appealed to the Texas Supreme Court.[6]

---

[6] EZ Management did not ask the trial court to take judicial notice of the usual and customary attorney's fees or the contents of the case file. It does not argue on appeal that we should presume the trial court took judicial notice. *See* Tex. Civ. Prac. & Rem. Code Ann. §

Statewide and Berrospe's counsel testified: "I am familiar with the reasonable and necessariness [*sic*] of [Statewide's and Berrospe's appellate attorney's fees] in reference to the *Arthur Andersen* elements."[7] Counsel, however, did not apply the elements to the facts of this case. Counsel also stated that he had never done an appeal and that he referred appellate work to a colleague. The record contains no other evidence regarding the parties' appellate attorney's fees.

We determine that the evidence is legally insufficient to support the trial court's award of appellate attorney's fees to EZ Management. Statewide's and Berrospe's counsel did not testify regarding specific *Arthur Andersen* elements. If he had, he could not have testified based on personal knowledge. Statewide's and Berrospe's general statements are insufficient to support an award of appellate attorney's fees. *See Dilston House*, 230 S.W.3d at 718 (affirming the trial court's denial of attorney's fees to the prevailing party where the prevailing party had not presented evidence of its reasonable attorney's fees); *Cale's Clean Scene Carwash*, 76 S.W.3d at 787 (denial of attorney's fees is appropriate if the evidence fails to prove the value of the services provided). Moreover, the testimony of Statewide's and Berrospe's counsel does not establish EZ Management's appellate attorney's

---

38.004 (Vernon 2008); *Arellano v. Don McGill Toyota of Katy, Inc.*, No. 14-09-00961-CV, 2011 WL 345869, at *3 (Tex. App.—Houston [14th Dist.] Feb. 3, 2011, no pet.) (mem. op.) ("Under section 38.004 of the Texas Civil Practice and Remedies Code, entitled 'Judicial Notice,' in a bench trial, the trial court, without receiving evidence, can take judicial notice of the usual and customary attorney's fees and the contents of the case file.").

[7] The Texas Supreme Court has identified non-exclusive factors the trial court should consider in evaluating the reasonableness of attorney's fees. *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997). These factors include (1) the time and labor required, novelty and difficulty of the questions involved, and the skill required to properly perform the legal service; (2) the likelihood that the acceptance of employment precluded other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent. *Id*

fees. *See Dilston House*, 230 S.W.3d at 718. In *Dilston House*, we rejected the argument that a trial court must assume reasonable fees for one litigant are the same as those for another where, as here, no evidence supports that assumption. *See id.* (testifying counsel did not know whether opposing counsel had spent the same amount of energy, time, and money on the case).[8]

We conclude that the testimony of Statewide's and Berropse's counsel provides, at most, no more than a scintilla of evidence supporting the trial court's award of appellate attorney's fees; therefore, the evidence is legally insufficient to support the award. *See City of Keller*, 168 S.W.3d at 822. We sustain Statewide's and Berrospe's third issue. We reverse the trial court's award of appellate attorney's fees and render judgment that EZ Management take nothing in appellate attorney's fees.

## II. Remaining Issues

In their fourth issue, Statewide and Berrospe assert that the trial court erred in unconditionally awarding EZ Management appellate attorney's fees, rather than awarding fees contingent on success. Having sustained Statewide's and Berrospe's third issue, we do not reach Statewide's and Berrospe's fourth issue.

In their fifth issue, Statewide and Berrospe request that, if we reverse EZ Management's damages award, we also reverse the trial court's denial of Statewide's and Berrospe's request for attorney's fees. We do not reverse EZ Management's damages award; therefore, we do not reverse the trial court's denial

---

[8] In contrast, in *Keith v. Keith*, 221 S.W.3d 156 (Tex. App.—Houston [1st Dist.] 2006, no pet.), cited by EZ Management, the court assumed that testimony regarding the reasonableness of appellate attorney's fees applied to both parties where the record showed that both parties' attorneys estimated approximately the same amount of time would be spent on appeal and the attorney to whom the assumption applied charged a higher rate than the attorney who testified regarding his appellate fees. *Id.* at 170 n.10.

of Statewide's and Berrospe's request for attorney's fees. We overrule Statewide's and Berrospe's fifth issue.

## CONCLUSION

We reverse the trial court's judgment in part with respect to the award of appellate attorney's fees to EZ Management, and render judgment that EZ Management shall recover no attorney's fees for proceedings in the court of appeals or the Texas Supreme Court. As modified, we affirm the remainder of the judgment.


/s/    William J. Boyce
            Justice


Panel consists of Justices Boyce, Jamison, and Donovan.